743 A.2d 268

**Walter J. SCZUDLO**

v.

**Julia BERRY.**

**No. 5983, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Dec. 30, 1999.

Susan M. Friedman (Kuder, Smollar & Friedman, P.C. on the brief), Washington, DC, for appellant.

Dorothy R. Fait (Fait & Malament, LLP on the brief), Rockville, for appellee.

Argued before WENNER, DAVIS and SALMON, JJ.

DAVIS, Judge.

On February 20, 1996, appellant Walter J. Sczudlo and appellee Julia Berry received a Judgment of Absolute Divorce from the Circuit Court for Montgomery County (Chapin, J.). The couple have three children: Lauren, born May 12, 1983; Elizabeth, born September 16, 1985; and Walter, born August 8, 1988. The judgment incorporated but did not merge a Separation and Property Settlement Agreement, which pro-

vided, in part, that the parties have joint custody of their three minor children, and that each parent would pay for the costs incurred by the parents while the children were with them, except that appellant additionally agreed to pay appellee $1,200 a month in child support. The agreement further provided that each parent would contribute equally to activities for the children to which they both agreed.

On March 25, 1998, appellant filed a Motion to Vacate or Modify Child Support Order. Appellant ceased paying the agreed child support amount at the end of March 1998. Subsequently, appellee filed an Opposition to the Motion to Vacate or Modify Child Support Order and a Motion for Contempt and other Relief. Appellant filed a response to appellee's opposition and later filed an opposition to appellee's motion for contempt. A hearing was held in the Circuit Court for Montgomery County on September 3, 1998, on both appellant's motion to vacate or modify child support and appellee's motion for contempt. On November 23, 1998, the trial court issued its order and opinion in which it found appellant in contempt and denied his motion to vacate or alter child support. The court ordered appellant to pay appellee $8,400 in back child support, $2,382.16 as reimbursement to appellee for appellant's share of the children's expenses, and awarded appellee fifty percent of her attorney's fees. On December 4, 1998, appellant filed a Motion for Stay of Order and a Motion to Shorten Time and an Amended Motion to Shorten Time. The court, on December 10, 1998, denied the motion to shorten time. This appeal followed. Meanwhile, appellee filed an opposition to the motion to stay the order on December 22, 1998 and the court denied the motion to stay on January 5, 1999. Appellant presents three questions for our review, which we rephrase:

I. Did the trial court err in denying appellant's motion to modify child support when it determined that no material change of circumstance occurred, despite appellant's loss of his job?

II. Did the trial court err in awarding appellee reimbursement for the children's expenses in violation of the parties' agreement?

III. Did the trial court err in awarding appellee fifty percent of her attorney's fees absent a determination by the court of the reasonableness of said fees?

We answer all three questions in the affirmative and, accordingly, reverse the judgment of the circuit court and remand.

## FACTUAL BACKGROUND

The parties to this action received a Judgment of Absolute Divorce on February 20, 1996, which incorporated but did not merge a Separation and Property Settlement Agreement. That agreement, dated November 23, 1994, provided that the parents have joint custody of their three minor children and each would be responsible for expenses while the children were in his or her custody, except that appellant would pay $1,200 a month in child support to appellee. Additionally, the parties would share equally in the expenses incurred for any traveling the children did without a parent and for activities to which both parties agreed. At the time the agreement was executed, appellant earned approximately $115,000 to $120,000 annually. At the time of the hearing on September 3, 1998, appellee's 1998 income was approximately $46,000, while appellant's 1997 earnings totaled $174,118.

Appellant's employment terminated in early April 1998. In anticipation of his loss of employment, appellant contacted appellee to request suspension of his child support obligation until he was once again employed. Unable to reach an agreement with appellee, he filed a motion to vacate or modify his child support with the court on March 25, 1998. Subsequently, appellant ceased paying his child support obligation. In response, appellee filed an opposition to appellant's motion and a motion for contempt for appellant's failure to maintain his child support payments. The September hearing was held and, following testimony, the trial judge took the matter under advisement and issued an order and opinion on November 23,

1998, which ordered appellant to pay appellee $8,400 in back child support and $2,382.16 for reimbursement of appellant's share of the children's expenses. The court also found appellant in contempt and awarded appellee fifty percent of her attorney's fees. Additionally, the court denied appellant's motion to modify child support, finding that no material change in circumstance existed because appellant maintained his standard of living even though unemployed. Appellant timely noted this appeal.

## DISCUSSION

### I

Appellant first contends that the trial court erred in determining that no material change in circumstance occurred to justify a modification in child support. Appellant asserts that the evidence of his termination of employment was sufficient to show a material change in circumstance and, accordingly, the court should have modified appellant's child support obligation to reflect his current financial status.

Section 12–104 of the Family Law Article permits the trial court to modify an amount of child support upon a showing of a material change in circumstance. MD.CODE (1999 Repl.Vol.), FAM. LAW (F.L.) § 12–104(a). Appellant states that his reduction in salary from more than $170,000 in 1997 to zero constitutes a material change in circumstance, justifying a reduction in his child support obligation. As the Court of Appeals explained in *Wills v. Jones,* 340 Md. 480, 488, 667 A.2d 331 (1995), the statute requires that the court evaluate 1) if a change of circumstance has occurred, and 2) if that change is material. The Court explained that at least two circumstances are clearly relevant to a petition to modify a child support obligation: 1) the passage of some event which causes the support actually received by the child to diminish or increase, and 2) a change that affects the income pool used to calculate the support obligation. *Id.* at 488 n. 1, 667 A.2d 331. For a change in circumstance to be material, the change must

be significant enough to justify judicial modification of the child support obligation. *Id.* at 489, 667 A.2d 331.

Appellant's loss of employment through no fault of his own is clearly a change in circumstance. When the parties signed their agreement in November 1994, appellant was making between $115,000 to $120,000 annually. The $1,200 monthly child support obligation therein was clearly in contemplation of appellant maintaining his income at that level, if not greater. Appellant testified that his unemployment was sudden and unexpected; it is clear from the evidence that he became involuntarily unemployed. The relevant inquiry is whether the change in circumstance is material and, if, despite his employment status, appellant is nevertheless capable of maintaining his court-ordered child support payments.

The trial court concluded that no material change in circumstance occurred. Appellant contends that the evidence does not support the court's finding. He specifically points to the court's opinion, in which it states that appellant demonstrated no change in lifestyle following his loss of employment. In support of this conclusion, the court stated that "[e]vidence was introduced during the hearing of several vacations since April 1998." Appellant states that the evidence indicated that he took a trip to Santa Barbara, California, to attend his mother's seventieth birthday for which his mother paid, that he attended a work conference with his current wife in North Carolina, and that he took his children to the beach during their spring break for six days. Appellant claims that the court's reliance on this evidence is insufficient to show that there was no change in his lifestyle after losing his job. We agree.

The court obviously accorded weight to the fact that appellant maintained a savings account of $12,000. Appellant states that the court ignored evidence that the savings account is jointly held between appellant and his current spouse. He points out that, while a natural parent bears the responsibility to support his or her child, a step-parent bears no such responsibility. *Knill v. Knill,* 306 Md. 527, 531, 510 A.2d 546

(1986) (citations omitted). This is not a case such as *Knill*, however, in which a step-parent is being ordered by the court to support a child that is not his or hers. The $12,000 savings account was a liquid asset of appellant and is a legitimate item for the court to consider in determining his ability to pay his support obligation.

In *Petrini v. Petrini*, 336 Md. 453, 463, 648 A.2d 1016 (1994), the Court of Appeals explained that the trial court has the latitude when it initially awards child support to consider all relevant circumstances in a case to determine what should be incorporated into the court's calculation of the child support order. In that case, the Court allowed contributions to the father from his mother to be considered as income under the statute's definition of "gift." *Id.* The Court articulated some of the considerations that the court should assess in determining a parent's child support obligation, which include: 1) a parent's actual ability to pay the specified child support award, 2) any lack of liquidity or marketability of a party's assets, 3) the fact that a parent's take-home income may not accurately reflect his or her actual standard of living, and 4) whether a party is voluntarily impoverished. *Id.* at 463–464, 648 A.2d 1016.

Although *Petrini* contemplated the court's assessment in providing an original award of support, the same considerations are applicable in the context of a request for modification of child support. As we noted, *supra,* the focus of the court's inquiry is not simply on whether a change occurred, but whether that change is significant enough to warrant a modification in the award by the court. *Wills,* 340 Md. at 489, 667 A.2d 331. In making that assessment, the court should evaluate not only the change, but how that change affects a parent's ability to meet his or her child support obligation.

In concluding that appellant's ability to pay his child support continued after his employment ended, the court viewed it as unreasonable that appellant would expend $5,000 of his $12,000 savings account toward legal fees instead of using those funds to fulfill his child support obligation. It

stated: "Thus, instead of paying the child support obligation, [appellant] voluntarily appropriated his funds to his attorney to commence this litigation." In the court's final assessment, it determined that appellant could maintain his child support at the time of the hearing. The court cited several factors to support this conclusion: 1) appellant was still employed when he commenced the modification action, 2) he ceased child support payments after March, despite receiving one-half of a paycheck in April, 3) he had $12,000 in savings, of which $5,000 was expended on legal fees in connection with the modification action, and 4) the evidence did not show a change in appellant's lifestyle. The court ordered appellant to pay back child support through October 1998 in the amount of $8,400.

We shall now evaluate the factors that the court used to support its conclusion. First, the court noted that appellant commenced the action when he was still employed. We do not perceive the relevance of this fact. Appellant filed the modification request in anticipation of his unemployment. He was, in fact, unemployed at the time of the hearing and he had been unemployed since March 1998. Appellant testified that the loss of his job was unexpected and sudden. He testified that he attempted to resolve his child support obligation with appellee unsuccessfully and it was only then that he sought relief through the court.

■ Appellant filed the action with the knowledge that the court is not permitted to retroactively modify a child support award prior to the date of the filing of the motion for modification. F.L. § 12–104(b). The court next points out that appellant received payment of two weeks' salary in April 1998 yet discontinued payment of child support in March 1998. Appellant testified that he had not expected this payment. The receipt of the payment, however, does not address appellant's change in circumstance. It is relevant as far as the court's analysis of his ability to pay his obligation, based on his income, but should not be the basis to deny any modification

when the evidence was undisputed that appellant's income changed from over $170,000 to zero.

The third factor that the court articulated was appellant's savings account, which contained $12,000. The court was obviously disturbed that appellant expended at least $5,000 of that money to pay for legal fees in connection with the modification action. It stated, "[r]easonable efforts were made to pay the attorney, while conscientiously not appropriating funds to his children." The arrearage from April through October 1998 was $8,400. Even assuming appellant had the full $12,000 to pay only his child support obligation, as the court indicated he should, within three months of the hearing, that asset would have been depleted. Certainly, the availability of few resources would constitute a material change in circumstance to justify a modification in appellant's support obligation. Additionally, in its consideration of the savings account, the court did not factor in appellant's other expenses, indicating that the $12,000 should not be allocated to anything other than appellant's support obligation. This analysis completely ignores appellant's responsibilities to support his children when they are in his custody, which is fifty percent of the time, in addition to any other legitimate expenses he may incur.

Lastly, the court found that appellant had not suffered a change in his lifestyle. The vacations that the court cited, however, were hardly luxurious and the evidence established that appellant did not fully pay for all of them. Appellant testified as to changes that have occurred in his daily life due to his unemployment. While appellant's lifestyle is a relevant consideration, his actual income should be considered to determine his ability to meet his obligation. *Wills*, 340 Md. at 485, 667 A.2d 331.

The court, on remand, must calculate appellant's child support obligation, based on his income and in light of his change in circumstance. In cases in which the Guidelines are applicable under the statute, "[o]nce a court finds that a material change in circumstance has occurred, it must apply

the guidelines in §§ 12–202 to 12–204 of the Family Law Article to determine the level of support to which the child is currently entitled." *Id.* at 491, 667 A.2d 331. We recognize that a parent is obligated to support his or her children. *Petrini,* 336 Md. at 466, 648 A.2d 1016 (quoting *Goldberger v. Goldberger,* 96 Md.App. 313, 326–27, 624 A.2d 1328, *cert. denied,* 332 Md. 453, 632 A.2d 150 (1993)). Appellant, therefore, is not able to use his unemployment as an excuse to forego his child support obligation. " 'The law requires [a] parent to alter his or her previously chosen lifestyle if necessary to enable the parent to meet his or her support obligation.' " *Id.* It is up to the court to make a factual determination as to appellant's income. *Wills,* 340 Md. at 497, 667 A.2d 331. In making its finding, the court should consider the totality of the circumstances. *Petrini,* 336 Md. at 462, 648 A.2d 1016. It is relevant, therefore, that the court here consider the temporary nature of appellant's unemployment, determining his potential income had he accepted a position commensurate with his education and experience.

 The guidelines specifically provide that a determination of potential income may not be made if a parent is: a) unable to work because of a physical or mental disability, or b) is caring for a child under two years of age for whom the parents are jointly and severally responsible. F.L. § 12–204(b)(2). It is clear that, in cases of involuntary impoverishment, the court is authorized to determine a parent's potential income. F.L. § 12–201(b)(2). *See also Wills,* 340 Md. at 492, 667 A.2d 331; *Wagner v. Wagner,* 109 Md.App. 1, 45–46, 674 A.2d 1 (1996). In the case *sub judice,* appellant is not unable to work due to a disability, nor is he caring for any children under the age of two. Additionally, it is patent that he did not voluntarily lose his job. In *Wills,* the Court of Appeals considered the legislative history of the child support guidelines and specifically noted that "the final bill replaced the original requirement that an involuntarily impoverished parent's obligation 'shall' be calculated using his or her potential income with an option that the parent's obligation 'may' be calculated based on the parents' [sic] potential income."

*Wills,* 340 Md. at 493, 667 A.2d 331 (citing 2 Journal of Proceedings of the Senate of Maryland 757 (1989)).

The Court of Appeals penned, in *Wills,* "Our review of the language and legislative history of the child support guidelines leads us to conclude that the legislature intended that a parent's support obligation can only be based on potential income *when the parent's impoverishment is intentional."* *Id.* at 494, 667 A.2d 331 (emphasis added). The statute, F.L. § 12–204(d), provides, however, "If the combined adjusted actual income exceeds the highest level specified in the schedule in subsection (e) of this section, the court may use its discretion in setting the amount of child support." The "highest level specified" in the statute is a combined adjusted actual monthly income of $10,000. Notwithstanding that the combined adjusted actual income in the instant case was $44,289.96 [1] (appellee's gross income from her 1998 financial statement) plus zero (appellant's income) for a total of $44,289.96 after appellant lost his employment, the calculation of the proper child support payment should be based on the amount to be modified, i.e., the combined total of the parties' incomes prior to appellant's unemployment. Consequently, the proscription against imputing income when impoverishment is not intentional is inapplicable in a case where the adjusted combined income exceeds $10,000 per month.

In other States, the court has discretion to impute income to a parent for purposes of calculating child support when the parent is unemployed. *Hoplamazian v. Hoplamazian,* 740 So.2d 1100, 1104 (Ala.Civ.App.1999), *cert. denied,* 8/27/99, Alabama Sup.Ct. 1981488; *In re Marriage of Casey,* 984 S.W.2d 894, 897 (Mo.Ct.App.1999). Those States recognize, and we agree, that, where the proscription against imputing income to one who is involuntarily impoverished is inappli-

---

1. Appellee testified at the September 3, 1998 hearing that her 1997 income was $43,000 and that her income for 1998 would be approximately $46,000. For purposes of calculating appellee's income, we have used her financial statement, dated April 29, 1998, which reflects a gross income of $44,289.96.

cable, the circumstances of the case will dictate when it is appropriate for the court to use its discretion. *Id.* Considering appellant's past employment, income, and education, we hold that it is appropriate for the court to consider appellant's probable income in determining appellant's child support obligation. In this case, appellant lost his employment through no fault of his own and, fortunately, at the time of oral argument, appellant was once again gainfully employed.

The loss of his employment from April to December, however, does not provide an automatic reduction to zero for his child support when he had the ability to become employed, albeit not in a position that he felt was commensurate with his skills. Appellant testified about his efforts to obtain employment, but the evidence indicated that appellant declined to accept positions which he felt were not commensurate with his skills; he was instead making efforts to find the job to which he felt he was best suited. This certainly was his prerogative, but not at the expense of his children. Appellant was perfectly employable from the time he became unemployed to the time he found his current position. The court is, therefore, justified in imputing to him his probable income for purposes of calculating his child support obligation during his unemployment.

We conclude that appellant demonstrated a sufficient change in circumstance as a result of his loss of employment to warrant judicial modification of his child support obligation. The court erred, therefore, in finding no material change in circumstance and, accordingly, in not adjusting appellant's child support obligation.

## II

Appellant next asserts that the trial court erred in awarding appellee reimbursement for appellant's share of expenses for the children. The court's order awarded $2,382.16 to appellee for health insurance expenses, pursuant to the parties' agreement and for other expenses incurred for the three children. Appellant claims that the court's award is

in direct conflict with the parties' agreement, which provides that appellant is responsible for one-half of the expenses for only those activities to which both parties agree. Additionally, he states that some of the items included in appellee's request for reimbursement were items prior to the parties' uncontested divorce proceeding and that claim was subsequently extinguished by the divorce proceeding.

Preliminarily, appellant highlights an apparent discrepancy in the amount of the court's award, noting that appellee requested a reimbursement of $2,425.11 and that the court provided an insufficient basis for its award of $2,382.16. Appellee asserts that the court made a minor math error of forty dollars in appellee's favor when it subtracted items from appellee's expense exhibit that appellant testified he had already paid.[2] Appellee maintains that the mathematical error is not sufficient to warrant a remand. Appellant counters that, without an explanation from the court as to how it calculated the figure, it is impossible to tell which expenses the court credited and which ones it disallowed. The court's opinion states:

> Pursuant to the parties['] Separation and Property Settlement Agreement, all expenses were to be shared equally, and [appellant] was to pay a share of [appellee's] health insurance premium to cover the cost of insuring the minor children. In [appellant's] exhibit # 3, evidence was introduced of expenses. [Appellant] was on notice of these charges, and has not reimbursed [appellee] for these charges. The expenses incurred were for the three children and were reasonable. Therefore, judgement [sic] will be entered in favor of [appellee] and against [appellant] in the amount of Two Thousand Three Hundred Eighty–Two Dollars and Sixteen Cents ($2,382.16).

---

2. *Appellee's exhibit number three was a listing of expenses that appellee sent to appellant for reimbursement, totaling $2,425.11. Appellant testified that the items circled on the list were items that he did, in fact, reimburse to appellee. As appellee points out, the amount, minus the paid items, totals $2,342.16. The court awarded $2,382.16—a difference of forty dollars.*

Appellant points out that a party may contend that the court performed improper calculations. *Reuter v. Reuter,* 102 Md. App. 212, 235, 649 A.2d 24 (1994). While there appears to be an error in the court's calculation of the award, the calculation is not a deliberate action by the court, nor does it result in a significant injustice to appellant. Because we do hold that the court provided insufficient findings of fact to support its award, the court will have another opportunity to correct its calculations.

Appellant presented three significant and separate issues at trial concerning the expenses appellee claimed he owed. The first issue concerned the parties' agreement concerning which party would be responsible for carrying the children on his or her health insurance policy. The second issue addressed the attendance by the parties' eldest child, Lauren, at a summer camp and the payments pursuant thereto. The third issue dealt with the amount of $150 that appellee claimed was owed in child support for the month of November 1995, before the couple finalized their divorce. In that the court's opinion does not sufficiently articulate findings of fact concerning the separate and distinct issues, we are unable to ascertain the basis of the court's award of $2,382.16.

The agreement executed by the parties reads:

The parties agree that at the time of execution of this Agreement, [appellee] shall maintain and pay for family medical insurance coverage for the parties' children and that [appellant] shall reimburse her monthly for two-thirds of the difference between the family coverage expense, and the cost of individual coverage under [appellee's] health insurance plan upon presentation by [appellee] of documentation monthly. The parties intend to be flexible and to confer from time to time regarding health insurance options available to each so as to continue to maximize the benefits available for the children at the lowest possible cost to the parties. Should the parties agree in the future that [appellant] shall maintain family medical insurance coverage for the parties' children, [appellee] shall reimburse him for one-third of the difference between the cost of family coverage

and the cost of individual coverage under [appellant's] health insurance plan.

Appellee requested reimbursement of $789.39 from appellant for health care coverage that she maintained on the children through her employer for the months of January through July 1995. Appellant testified that appellee knew he had placed the children on his policy and, therefore, he did not owe the money. Appellee testified that she did not know that he had obtained health insurance and thought she was responsible for the coverage. Both parties presented conflicting evidence as to what they agreed concerning health insurance. We are obliged to give due regard to the opportunity of the trial court to judge the credibility of the witnesses. MD. RULE 8–131(c) (1999).

While the court's award of reimbursement to appellee indicates that the court gave great weight to appellee's testimony and evidence, it is not for us to speculate. As explained, *supra,* the court simply observed that the parties' agreement stated that appellant was to pay a share of appellee's health insurance premium pertaining to the children's coverage. The language of the agreement, however, is not that unambiguous. The provision states that appellee will initially provide health insurance, but leaves the possibility open that the parties will change that arrangement. Appellant testified that such a change occurred. The court's explanation does not provide us with sufficient information as to how the court resolved the conflict.

 Another primary issue raised by the parties at trial concerned the reimbursement by appellant of his daughter's camp expenses, totaling $734.25. Additionally, appellant maintained that he did not agree to the other expenses listed in appellee's exhibit. Appellant presented evidence that, while he was aware that his daughter was attending camp, he never actually consented to her going and, therefore, pursuant to the terms of the agreement, he was not obligated to pay for one-half of the expenses incurred by appellee. The agreement states:

3.3 In addition to the foregoing payments, [appellant] shall be responsible for the following:

. . .

(ii) One-half of all costs of summer camp, travel and recreation unaccompanied by a parent, as well as lessons for the children, *agreed upon by the parties;*

(iii) One-half of all agreed-upon other expenses on behalf of the children.

(Emphasis added.) The court's opinion, however, does not address the requirement that the parties agree on the claimed expenses. The court noted that appellee presented evidence of expenses, that appellant had notice of these charges, and that the expenses incurred were reasonable. Nowhere does the court seem to resolve whether an agreement existed between the parties concerning the expenses. An interpretation of the agreement is a question of contract law. *Bagley v. Bagley,* 98 Md.App. 18, 33, 632 A.2d 229 (1993), *cert. denied,* 334 Md. 18, 637 A.2d 1191 (1994)(citing *Mendelson v. Mendelson,* 75 Md.App. 486, 501, 541 A.2d 1331 (1988)). We recognized in *Bagley* that, "when the appellate court views the ultimate conclusion of the chancellor founded upon sound legal principles and based upon factual findings that are not clearly erroneous, the chancellor's decision should be disturbed only if there has been a clear abuse of discretion." *Id.* at 34, 632 A.2d 229 (citations omitted). The court's findings here, however, are clearly erroneous because they do not appear to be based on the terms of the agreement, but rather on other issues the court deemed significant, namely, notice to appellant and the reasonableness of the expenses.

The court's opinion ignores the explicit terms of the agreement. It states, "Pursuant to the parties['] Separation and Property Settlement Agreement, all expenses were to be shared equally. . . ." The agreement clearly sets out that the parties are only responsible for expenses relating to activities and insurance to which they both agree. There can be no breach of that agreement without proof that an agreement

existed. No such proof was proffered. Therefore, the court erred in its determination that appellant was responsible for the expenses that appellee claimed.

The third contention between the parties involved the payment of $150 in child support owed from November 1995. Appellant asserts that appellee is precluded from making this claim for back payment because the parties agreed after November 1995 to proceed with an uncontested divorce and that appellee failed at that time to raise the issue. Nowhere in the court's opinion did it resolve the issue. For the foregoing reasons, we shall remand in order that the court may determine the respective obligations under the parties' contract and any breach thereof, and articulate how that results in any amount awarded by the court.

### III

Appellant claims that the court erred in awarding one-half of appellee's attorney's fees. He takes issue with the trial court's lack of consideration as to the reasonableness of the fees. The relevant statute states:

(a) The court may award to either party the costs and counsel fees that are just and proper under all the circumstances in any case in which a person:

(1) applies for a decree or modification of a decree concerning the custody, support, or visitation of a child of the parties;

. . .

(b) Before a court may award costs and counsel fees under this section, the court shall consider:

(1) the financial status of each party;

(2) the need of each party; and

(3) whether there was substantial justification for bringing, maintaining, or defending the proceeding.

F.L. § 12–103(a)and(b).

The decision to award counsel fees rests solely in the discretion of the trial judge. *Petrini*, 336 Md. at 468, 648 A.2d

1016. However, in making that decision, the trial judge is bound to consider and balance the considerations contained in F.L. § 12–103(b). *Bagley,* 98 Md.App. at 39, 632 A.2d 229.

While the statute does not expressly mandate the consideration of reasonableness of the fees, this Court and the Court of Appeals have indicated that evaluation of the reasonableness of the fees is required. In *Petrini,* the Court explained that, when an action permits that attorney's fees be awarded, "they must be reasonable, taking into account such factors as labor, skill, time, and benefit afforded to the client...." *Petrini,* 336 Md. at 467, 648 A.2d 1016. Additionally, we stated in *Lieberman v. Lieberman,* 81 Md.App. 575, 601–602, 568 A.2d 1157 (1990), in remanding the case to the trial court for consideration of increasing the award of attorney's fees, that the court "must look at (1) whether the [award] was supported by adequate testimony or records; (2) whether the work was reasonably necessary; (3) whether the fee was reasonable for the work that was done; and (4) how much can reasonably be afforded by each of the parties." In light of these decisions, the need for the court to assess the reasonableness of the fees is a necessary consideration. We see nothing in the record that reflects any consideration by the court as to the reasonableness of appellee's attorney's fees.

We also note that the court had little proof before it as to the amount of the fees, or their reasonableness. A party seeking reimbursement of fees bears the burden to present evidence concerning their reasonableness. *Commercial Union Ins. Co. v. Porter Hayden Co.,* 116 Md.App. 605, 703, 698 A.2d 1167, *cert. denied,* 348 Md. 205, 703 A.2d 147 (1997) (quoting *Maxima Corp. v. 6933 Arlington Dev. Ltd. Partnership,* 100 Md.App. 441, 453–54, 641 A.2d 977 (1994)). Appellee, in her opposition to appellant's motion to modify child support and in her motion for contempt requested that the court award her reasonable attorney's fees and costs. At the hearing on September 3, 1998, appellee's counsel questioned appellee about her fees.

[APPELLEE'S COUNSEL]: And have you incurred attorney's fees in these proceedings?

[APPELLEE]: I have.

[APPELLEE'S COUNSEL]: And how much have you incurred to date?

[APPELLEE]: Well, before this morning, it was about $2,500.

. . .

[APPELLEE]: I had spent my whole retainer.

Appellee also testified that she had borrowed the $2,500 retainer from her parents. In her closing argument, appellee's counsel asked the court:

We are asking Your Honor also to award a substantial part of her attorney's fees because I do not think this case—we have spent all day here now—needed to come this far. If [appellant] had simply used the resources available to him to pay the child support—he had the funds to do it, he had the resources to do it—we would not have had to go through all of this.

Nowhere else in the record do we see evidence concerning the amount of attorney's fees, or justification for the amount. While bound to weigh the factors included in the statute, the court must also have sufficient proof before it showing how the fees were incurred and that they are reasonable. *See id.* The record before us is devoid of such evidence. None of appellee's motions or memoranda before the court, her testimony, or her counsel's closing argument address the reasonableness of the fees, or how they relate to the services rendered.[3] Without such proof, the court could not sufficiently evaluate

---

**3.** Of course, the court, as an experienced trial judge and former lawyer of longstanding, is qualified to opine as to reasonableness of attorney's fees based on its familiarity with the time and effort of counsel as evidenced by the presentations in the proceedings before the court. The trial judge, however, must affirmatively state, for the record, that he has drawn on his experiences as a judge and former litigator in assessing the reasonableness of attorney's fees.

the reasonableness of the fees, which, as we explained, *supra,* is a necessary consideration for the court when deciding an award of attorney's fees.

We further find no support for the court's evaluation of the second statutory factor. The court correctly stated that "[t]he [c]ourt must inquire as to the financial status, the needs, and the substantial justification of the suit. [citation omitted]." The court continued to evaluate each of the factors. "As stated above, the parties have disparate incomes. Second, [appellee] has had the children for most of the time in question without the benefit of the monthly child support. Thus, [appellee] had more needs on less income and without any aid from [appellant]." We, however, find no support in the record for the court's conclusion that the children were with appellee most of the time in question. There is no dispute that appellant ceased paying his child support obligation after March 1998; hence, the children did not have the benefit of monthly support; however, the evidence shows and the parties do not dispute that they maintain joint custody of the children and that they enjoy a fifty-fifty physical custody arrangement. Moreover, the evidence indicates the children may now spend more time with appellant in light of his testimony that he provides after school care to the children. We simply find no basis in the record for the court's conclusion; therefore, we hold that its finding is clearly erroneous.

■■■ Furthermore, the court, in concluding its evaluation of the statutory factors, stated:

> Finally, the litigation commenced had merit. [Appellant] did incur a change in employment. Although the lifestyle did not change, the daily life did change for [appellant]. This change did precipitate the commencement of the suit, and was in the [c]ourt's mind substantial justification for the litigation. Due to the needs and the financial status, the [c]ourt deems it necessary for [appellant] to pay Fifty percent (50%) of [appellee's] attorney's fees.

The court appears to justify its award of attorney's fees to appellee because appellant had a legitimate reason to com-

mence the modification action. It is illogical to award to appellee attorney's fees due to appellant's substantial justification in filing the suit. The third consideration in the statute is "whether there was substantial justification for bringing, maintaining, or defending the proceeding." F.L. § 12–103(b)(3). If the court determined that appellee was due an award of attorney's fees, the statute provides that the court could make a finding that appellee had substantial justification in defending the suit and initiating the action to enforce the support payments. In *Lieberman*, we stated that the fact that the trial court had found in favor of Ms. Lieberman carried with it "an implicit finding of very substantial justification." *Lieberman*, 81 Md.App. at 600, 568 A.2d 1157. But our evaluation there was in the context of Ms. Lieberman bringing the suit. In the case *sub judice*, the court uses the substantial justification for appellant to bring the suit in order to find in favor of appellee. In the court's reconsideration of these factors on remand, the evaluation by the court for finding substantial justification should be from the perspective of the prevailing party, consistent with *Lieberman*.

In sum, the court erred in finding that no material change in circumstance occurred that would warrant a modification in the child support obligation as articulated in the agreement of the parties. We remand this case for further consideration and articulation of findings by the court of breach of the parties' agreement, if any, to justify an award of expenses to appellee. We hold that the court erred in making an award of attorney's fees to appellee absent consideration and sufficient proof of the reasonableness of the fees.

**JUDGMENT BY THE CIRCUIT COURT FOR MONT-GOMERY COUNTY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**