864 A.2d 210

**Vyron WHEELER**

v.

**STATE of Maryland t/u/o Nedia Barrett.**

**No. 00337, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

Dec. 27, 2004.

Vyron Wheeler, appellant, pro se.

Joseph B. Spillman (J. Joseph Curran, Jr., Atty. Gen. on the brief), Baltimore, for Appellee.

Panel: HOLLANDER, SHARER, CHARLES E. MOYLAN, JR., (Retired, specially assigned) JJ.

HOLLANDER, Judge.

Vyron Wheeler, appellant, who is *pro se*, is currently incarcerated in federal prison in Atlanta. On December 20, 2002, Wheeler filed a motion to modify his child support obligation because of his lengthy prison sentence. We are advised that appellant is serving a sentence of twenty years to life, and will not be eligible for parole until 2016.

On appeal, Wheeler challenges an Order issued by the Circuit Court for Prince George's County on January 29, 2003, and docketed on March 7, 2003, pertaining to his motion to modify. In particular, appellant takes issue with the language of the Order, which suspends his child support obligation

during his imprisonment but reinstates it upon his release from incarceration. Appellant perceives the reinstatement as "[u]nreachable and [in] conflict with his reasonable success at parole."

Appellant presents the following four questions, which we quote:

I. Is the Order of March 12, 2002[sic]—by Judge Krauser [sic],[1] for appellant to begin $350.00/mo. child support payments **within three days of release from prison,** unreasonable to a newly released prisoner?

II. Does the Circuit Court for Prince George's County, Maryland have proper jurisdiction over a newly released federal prisoner under the control of the United States Department of Justice and the United States Parole Commission?

III. Does the United States Parole Commission already have provisions for ensuring that a newly released parolee will meet his/her financial obligations, especially court-ordered child support payments?

IV. In the interest of justice and the welfare of the child, can an equitable decision be rendered by the Maryland Circuit Court that a parolee under the direct supervision of the United States Parole Commission can live with?

(Emphasis in original).

The State of Maryland, t/u/o Nedia Barrett, appellee, distills appellant's contentions to the following question:

Did the Circuit Court correctly apply Maryland law when it suspended [a]ppellant's child support obligation during the entire period of his incarceration and granted him the right to a hearing on his motion for modification, when he is

---

1. There is no Order in the record that is either dated or entered on March 12, 2002. We assume appellant is referring to the Order dated January 29, 2003, and docketed March 7, 2003. According to the docket, that Order was issued by Judge Weatherly, not Judge Sherrie Krauser.

released, to establish his ability to pay at that time so long as he notifies the child support agency of his release and provides the agency with information identifying the location of his home and any employer?

For the reasons that follow, we shall affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On June 13, 1985, Nedia Barrett gave birth to Damien Von Wheeler.  On February 27, 1992, Ms. Barrett filed a "Complaint to Establish Paternity" in the Circuit Court for Prince George's County, seeking to establish appellant as Damien's father and to obtain child support.  By a "Waiver of Constitutional and Statutory Rights and Admission of Paternity," entered April 15, 1992, appellant admitted paternity.  Thereafter, by Order dated April 29, 1992, and entered May 5, 1992, the court ordered appellant to pay $280 per month in child support.[2]

Through the Office of Child Support Enforcement for Prince George's County, Barrett moved on May 7, 1993, to cite appellant for contempt for failure to comply with his support obligation.  Thereafter, a hearing was held and culminated in an Order of Court dated July 9, 1993 (docketed July 13, 1993).  The court assessed arrears against appellant in the amount of $3,080 as of July 1, 1993; ordered appellant "to pay ongoing support of $280.00 per month"; and imposed payment of "an additional $50.00 per month toward the arrears until the arrears are paid in full, commencing July 15, 1993[.]"

Barrett filed another contempt motion against appellant on February 2, 1994.  Following a hearing on that motion, the Master recommended, *inter alia*, that, commencing January 15, 1995, appellant be required to "make the ongoing payment of $280.00 per month plus pay $70.00 per month" toward arrears of $8047.25.  Thereafter, by "Order of Court" dated

---

**2.**  Appellee incorrectly states that, in the Order of April 29, 1992, appellant was ordered to pay child support of $200 a month.

January 3, 1995, the court "ratified" the Master's recommendations and "incorporated [them] by reference" into its Order.

On December 10, 2002, appellant filed a "Motion for Modification of Child Support," claiming a "substantial change in circumstances." Appellant asserted: "I am incarcerated and unable to pay child support Ordered, because I do not make enough to pay child support." Appellant requested that his "current support order be reduced or terminated as appropriate. . . ." He also submitted a copy of an order issued by the Superior Court of the District of Columbia, dated October 7, 2002, granting appellant's motion to terminate his child support obligation with respect to another child whom he fathered.

In an "Order" dated January 29, 2003, and docketed March 7, 2003, the court, *inter alia,* suspended appellant's child support obligation, retroactive to December 10, 2002, *i.e.,* the date he filed his motion for modification, through the period of his incarceration. In addition, the court directed appellant to notify the court and the Office of Child Support Enforcement of his release from incarceration within three days of release; provided for reinstatement of appellant's child support obligation upon his release; directed appellant to notify the court and the Office of Child Support Enforcement of his residential and work addresses within thirty days of his release; ordered a hearing on appellant's Motion for Modification of Child Support within ninety days of his release from incarceration and notification to court of his residential address; and directed that the court dismiss appellant's modification motion if he failed to comply with the notification requirements.

Specifically, the Order at issue provides:

### ORDER

Upon consideration of Defendant's Motion for Modification of Child Support, Notice of Defendant's Incarceration, and verification of Defendant's present incarceration, it is this *29th* day of *January,* 2003, by the Circuit Court for Prince George's County, Maryland,

ORDERED that this Court's Order of April 29, 1992, requiring Defendant to pay continuing support of $280.00 per month and this Court's Order of January 3, 1995 ordering an additional $70.00 per month toward arrearages, be and hereby is SUSPENDED from the date of filing of Defendant's motion on December 10, 2002, until Defendant is released from his present term of incarceration; and it is further

ORDERED that Defendant shall notify the Court and the Office of Child Support Enforcement of the date of his release from incarceration, not more than three (3) days after that date; and it is further

ORDERED that the Orders of April 29, 1992 and January 3, 1995, establishing Defendant's obligation to pay child support, shall be automatically reinstated by the Court upon Defendant's release from incarceration; and it is further

ORDERED that the Defendant shall file a change of address notice with the Court and the Office of Child Support within thirty (30) days after his release from incarceration, providing his social security number, and home and work addresses and telephone numbers; and it is further

ORDERED that Defendant's Motion for Modification of Child Support shall be scheduled for hearing within ninety (90) days of Defendant's Notice to the Court of his release from incarceration and current residence address [sic]; and it is further

ORDERED that Defendant's Motion for Modification of Child Support shall be dismissed if Defendant fails to comply with the terms of this Order or fails to appear at a hearing scheduled on this Motion; and it is further

ORDERED, that this case be and is hereby closed for statistical purposes only.

On April 2, 2003, appellant filed a Notice of Appeal. Then, on June 13, 2003, he filed a Motion to Vacate the Order dated January 29, 2003, and docketed March 7, 2003. In the motion, appellant argued that the court's Order was "extreme and

[that] termination of child support is appropriate due to the defendants [sic] change in circumstances." Appellant further noted that the court failed to make a finding of change in circumstances, "ruling instead to just suspend defendant's child support until he is released from prison." He asserted: "Defendant has not had a ruling on his motion[,] which he is entitled to by right.... A judgement [sic] must be made at this time as to the fact's [sic] as stated."

By Order dated June 5, 2003, and entered June 11, 2003, the circuit court (Krauser, J.) denied appellant's motion to vacate. Appellant filed a second appeal on July 11, 2003.

We shall include additional facts in our discussion.

## II.  DISCUSSION

■ Appellant challenges the court's Order dated January 29, 2003. Acknowledging that the court "modified" his child support obligation, he nonetheless complains because the court reinstated his support obligation, effective three days after his release from incarceration. Appellant states: "The [m]ain argument presented by Appellant is directed to the language of the Order ... which states that Appellant must start paying child support (3) days after his release from prision [sic]." He adds that he "solely contest[s] (3) days to comply with the provisions of the Order ...", explaining that "the demands of the court are [u]nreachable and conflict with his reasonable success at parole." According to appellant, "after serving twenty-years (20) of imprisonment", there is "no reasonable way" that he can comply with what he refers to as " 'the three-day begin payment order.' " He adds: "All appellant seeks is reasonableness in establishing a payment schedule he can live with to assert his responsibility as a father to a child."

Further, appellant contends that a "jurisdictional conflict arises" between the court's Order dated January 29, 2003, and "the orders [a] parolee **must follow** in the begining [sic] of his parole" under the jurisdiction of the United States Parole Commission. (Emphasis in original). He asserts: "[T]he

Circuit Court for Prince George[']s County ... misapprehends the honorable court's complete jurisdiction over the appellant, and must by law, incorporate it's [sic] court action with the U.S. Parole Commission for enforcement and collection of said court-ordered monies, from Appellant Wheeler."

In appellant's view, the court's Order is "unreasonable to a newly released prisoner", because "there are rules and regulations promulgated by the U.S. Parole Commission to prevent the parolee from ignoring such a court order[.]" He states: "If [appellant] fails to pay court-ordered child support while on parole, he violates condition number thirteen [of his Federal parole], get[s] a second chance to be placed under sanction and more intense supervision, then failing to observe conditions number thirteen and number fifteen, violates his parole and is sent back to prison."

Accordingly, appellant asks this Court to "remand the matter to the Circuit Court for Prince George's County Maryland, for reconsideration as to 'effect of order on a new parolee,' and order that the lower court work in concert with the U.S. Parole Commission whom [sic] already has a plan in effect for this situation."

Appellee insists that appellant's "challenge to the Circuit Court's ruling results from his misreading of the [O]rder entered on March 7, 2003." According to the State, if appellant complies with the court's Order requiring him to provide his address upon release, the court will promptly schedule a hearing on appellant's motion to modify, "at which he will be able to obtain a support payment schedule consistent with his circumstances." Moreover, the State points out that, in view of appellant's motion to modify, the court will be able to make any support obligation imposed at that hearing retroactive to the date of appellant's release from prison. Put another way, the State suggests that Wheeler's actual support obligation will be the one determined at the hearing, not the one that goes into effect three days after appellant is released.

In addition, appellee argues that appellant's "concerns are unwarranted" because Damien, born in 1985, is already eman-

cipated. *See* Md.Code Ann. (2001 Repl.Vol.), Art.1, § 24 (establishing eighteen as the age of majority). Thus, the State asserts:

> Mr. Wheeler will have no ongoing obligation to continue paying $280 a month in current support in 2015 even if he fails to undertake the minimal effort needed to guarantee the scheduling of a hearing on his motion. Rather, under the terms of the challenged order, he will be required to begin, after his release, to pay only the $70 a month specified in the 1993 order of repay the arrears that accumulated before his incarceration."

In addition, the State contends: "Mr. Wheeler does not and cannot provide any applicable authority to support his claim that a Maryland court, in establishing or modifying a Maryland child support order, either loses jurisdiction to, or is required to take its direction from, a federal parole commission." According to the State, the circuit court retains its jurisdiction "to modify its own child support order consistent with the Child Support Guidelines in Title 12 of the Family Law Article and the court's responsibility to protect the best interest of [the] child."

We agree with the State that "the court has already granted Mr. Wheeler all of the relief available to him under Maryland law." As the State points out, the issue here "is not whether Mr. Wheeler is entitled to a modification for the time that he has been, and will continue to be, incarcerated with no significant income. The challenged [O]rder suspends Mr. Wheeler's support obligation 'from the date of the filing of . . . [Wheeler's] motion on December 10, 2002, until [he] is released from his present term of incarceration.'" We explain.

"It is well established that parents have an obligation to support their children." *Durkee v. Durkee,* 144 Md.App. 161, 182, 797 A.2d 94, *cert. denied,* 370 Md. 269, 805 A.2d 266 (2002); *see Wills v. Jones,* 340 Md. 480, 484, 667 A.2d 331 (1995) ("[O]ne of the most fundamental duties of parenthood 'is the obligation of the parent to support the child until the law determines that he is able to care for himself.'") (citation

omitted); *Middleton v. Middleton,* 329 Md. 627, 633, 620 A.2d 1363 (1993); *Carroll County Dept. of Soc. Servs. v. Edelmann,* 320 Md. 150, 170, 577 A.2d 14 (1990); *see also Malin v. Mininberg,* 153 Md.App. 358, 395, 837 A.2d 178 (2003); *Sczudlo v. Berry,* 129 Md.App. 529, 542, 743 A.2d 268 (1999).

Title 12 of the Family Law Article ("F.L.") of the Maryland Code (1999 Repl.Vol.) provides a comprehensive scheme with regard to child support. The child support guidelines are codified at F.L. §§ 12–201 to 12–204 and provide the mandatory method to determine the amount of child support. *See Wills,* 340 Md. at 484, 667 A.2d 331; *Voishan v. Palma,* 327 Md. 318, 322, 609 A.2d 319 (1992); *Payne v. Payne,* 132 Md.App. 432, 440, 752 A.2d 1209 (2000).

The standard applicable to a request for modification of a child support obligation is relevant here. F.L. § 12–104 states, in part:

**Modification of child support award.**

(a) *Prerequisites.*—The court may modify a child support award subsequent to the filing of a motion for modification and upon a showing of a material change of circumstance.

In regard to a motion to modify child support, the "threshold question" is whether a material change in circumstances has occurred since the matter was last before the trial court. *Kierein v. Kierein,* 115 Md.App. 448, 456, 693 A.2d 1157 (1997). A change is "material" when it meets two requirements. First, the change "must be relevant to the level of support a child is actually receiving or entitled to receive." *Wills, supra,* 340 Md. at 488, 667 A.2d 331. Second, the change must be "of sufficient magnitude to justify judicial modification of the support order." *Id.* at 489, 667 A.2d 331. Thus, the court must focus upon "the alleged changes in *income* or *support*" that have allegedly occurred after the child support award was issued. *Id.* (Emphasis added).

*Wills* makes clear that "the passage of some event causing the level of support a child actually receives to diminish or increase" is relevant and material. *Wills,* 340 Md. at

488 n. 1, 667 A.2d 331. A change "that affects the income pool used to calculate the support obligations upon which a child support award was based" is necessarily relevant. *Id.*

*Wills,* provides guidance here. In that case, the appellee, who was serving a ten-year prison sentence, filed a motion to stay enforcement of his child support obligation during his incarceration. *Id.* at 485, 667 A.2d 331. At the time of the father's incarceration, he was obligated to pay $50 per week in child support. *Id.* Because of his incarceration, however, the father's income dropped to twenty dollars per month, and he was without assets. *Id.* The circuit court granted the father's motion to stay. On appeal, we affirmed, construing the court's order as a modification rather than a termination of the appellee's child support obligation. *Id.* 486, 667 A.2d 331.

On *certiorari* to the Court of Appeals, the child's mother, who was the appellant, argued that the circuit court erroneously terminated the father's support obligation. *Id.* In contrast, the father claimed that the circuit court "merely suspended his support obligation under its authority to modify child support awards during the time he was in prison." *Id.* The *Wills* Court noted that it was "unclear from the record precisely what relief the circuit court granted by its order 'staying enforcement' of [the incarcerated father's] child support obligation." *Id.* It cautioned, however, that if the circuit court's order "was intended to terminate [appellee's] obligation to pay child support, its authority to do so could not arise from [F.L.] § 12–104(a)." *Id.* The Court of Appeals explained, *id.* at 486–87, 667 A.2d 331:

> Although it is conceivable that a child support award could be modified to $0 per month if a parent's income were low enough or equitable considerations demanded it, the *obligation* to pay child support would remain. Because the obligation remains, a child support award of $0 can be increased when future circumstances may justify an increase or automatically increased when [the appellee] is released on work release or released from prison. Section

12–104(a), however, contains no provision allowing a court to entirely terminate a parent's obligation.

(Emphasis in original).

The *Wills* Court assumed that this Court was correct "in characterizing the circuit court's order as a modification of child support under [F.L.] § 12–104(a)." *Id.* at 487, 667 A.2d 331. Nevertheless, the Court of Appeals remanded the case to the circuit court for further proceedings. The Court explained:

> Because we decline to create a *per se* rule freeing incarcerated parents with no assets from their child support obligations, *we will remand the matter to the circuit court to determine whether [appellee] is entitled to a modification of child support under [F.L.] § 12–104(a). If so, the circuit court must determine the level of [appellee's] child support obligation by applying the child support guidelines or provide an explanation for departing from those guidelines as required by [F.L.] § 12–202(a)(2)(iv).*

*Id.* (emphasis added).

The *Wills* Court went on to consider "whether penal incarceration constitutes a material change of circumstances sufficient to justify the modification of a child support award ... and whether an incarcerated parent should be considered voluntarily impoverished" under F.L. § 12–204(b). *Id.* at 483, 667 A.2d 331. The Court explained that "voluntary" means that "the action [must] be both an exercise of unconstrained free will and that the act be intentional." *Id.* at 495, 667 A.2d 331. The Court reasoned: "In determining whether a parent is voluntarily impoverished, the question is whether a parent's *impoverishment* is voluntary, not whether the parent has voluntarily avoided paying child support. The parent's intention regarding support payments, therefore, is irrelevant." *Id.* at 494, 667 A.2d 331 (emphasis in original). Accordingly, the Court determined that "a prisoner's incarceration may constitute a material change of circumstance if the effect on the prisoner's ability to pay child support is sufficiently reduced due to incarceration." *Id.* at 483, 667 A.2d 331.

Further, the Court indicated that, "[t]o determine whether a parent is voluntarily impoverished, . . . a court must inquire as to the parent's motivations and intentions." *Id.* at 489, 667 A.2d 331. It concluded that an incarcerated parent cannot be deemed " 'voluntarily impoverished' unless he or she committed a crime with the intent of going to prison or otherwise becoming impoverished." *Id.* at 483, 667 A.2d 331. The Court explained that a parent "is only 'voluntarily impoverished' as a result of incarceration if the crime leading to incarceration was committed with the intention of becoming incarcerated or otherwise impoverished." *Id.* at 497, 667 A.2d 331.

Our decision in *Payne, supra,* 132 Md.App. 432, 752 A.2d 1209, also provides guidance. There, the circuit court passed an order "suspending" the appellee's child support during a six-week period of the summer that the child was visiting the appellee, her father. *Id.* at 443, 752 A.2d 1209. It its oral ruling, however, the court stated that it would not deviate from the guidelines in terms of recomputing the appellee's support obligation. *Id.* at 437, 752 A.2d 1209. It held: "[I]f the natural father has the child for the six weeks span of time, it seems inequitable to me, it seems unjust to me, that he should still continue paying support to the natural mother while the child is, in fact, in his custody." *Id.* at 437–38, 752 A.2d 1209. Although we reversed the lower court's decision, we determined: "In our view, regardless of the court's characterization of its action as a 'suspension' of support, the net effect of its ruling amounted to a modification of child support[.]" *Id.* at 443, 752 A.2d 1209.

In our view, appellant received the relief he requested. The court clearly modified appellant's support obligation, as requested by appellant in his motion to modify, when it suspended appellant's child support obligation from the date of his motion through the entire period of his incarceration.

Moreover, Damien, born in 1985, is already emancipated. As a practical matter, the court's Order reinstating appellant's support obligation upon his release will apply only to arrearag-

es that were in existence prior to the filing of the modification request. Consistent with *Wills*, the court ordered a hearing on appellant's motion to modify within ninety days of his notice to the circuit court of his release from incarceration and his address. At that time, the court will be in a position to determine whether appellant is able to pay the arrearages, and it can determine whether its Order should be made retroactive to the date of appellant's release.

**JUDGMENT AFFIRMED. COSTS WAIVED.**