752 A.2d 1209

Gisela M. PAYNE

v.

Robert A. PAYNE, Jr.

No. 1241, Sept. Term, 1999.

Court of Special Appeals of Maryland.

June 5, 2000.

Karolyn N. Bowe, Elkton, for appellant.

· Wendy B. Culberson, Elkton, for appellee.

Argued before HOLLANDER, SALMON and BYRNES, JJ.

HOLLANDER, Judge.

This case arises from a dispute between Gisela M. Payne, appellant, and Robert A. Payne, Jr., appellee, concerning child support. After a hearing on June 7, 1999, the Circuit Court for Cecil County suspended appellee's child support obligation for the six week period of summer visitation, when the father was to have sole physical custody of the parties' only child, Sonja Marie, who was born on July 17, 1988. Appellant noted her appeal and presents two questions for our consideration:

I.  Did the trial court err when it made a ruling on the issue of modifying Appellee's child support obligation where there was no motion or pleading before the Court and there was no material change of circumstance?

II. Did the trial court err when it deviated from the child support guidelines and modified or terminated the child support for six consecutive weeks that the minor child visited with the Appellee?

For the reasons discussed below, we shall reverse and remand.

## FACTUAL SUMMARY

In November 1993, appellant initiated divorce proceedings that culminated in an award of absolute divorce to appellee, pursuant to a Judgment of Absolute Divorce dated July 31, 1996. The order of that date "reserved" as to the issue of custody and visitation, but continued appellee's child support

obligation of $124.00 per week, which had been established by a *pendente lite* order of December 29, 1993. Subsequently, by order dated February 12, 1998, appellant was awarded sole custody of the couple's child, and appellee was given visitation on alternating weekends.

In March 1999, appellee filed a Complaint For Modification Of Custody, which he later amended. He alleged that "circumstances have changed significantly and it is in the [child's] best interest" to be in his custody. In response, appellant filed a "Motion To Dismiss, Or In The Alternative, Motion For More Definite Statement."

On May 14, 1999, following the hearing on appellant's motion, appellee's counsel wrote a letter to the court advising that the mother had "offered" to permit the father "to have the parties' minor child for six (6) consecutive weeks during the summer," rather than the two weeks that had been anticipated. The letter further stated, in pertinent part:

Mr. Payne is more than happy and willing to have his daughter for this time frame. However, Mr. Payne has a concern regarding child support during this period. My client currently pays $124.00 per week in child support. He believes that during the six (6) weeks that he has his daughter this summer, his child support obligation should cease, and Ms. Payne should, in turn, pay him the $124.00 per week, as the parties' incomes are almost identical. Please note that [appellant's counsel] has done a calculation whereby she included the six (6) weeks, along with my client's regular visitation, and the total number of overnights does not warrant a shared custody calculation.

However, at the request of my client, I am asking Your Honor to make a ruling regarding the child support matter for the six (6) weeks that the child is with my client.

Appellant's counsel responded by letter to the court on June 1, 1999, stating, in pertinent part:

I have received a copy of a letter dated May 14, 1999, as well as, a copy of a letter with your notes dated May 19, 1999. I am presuming that [Y]our Honor has not yet made

a ruling without permitting me to respond to this letter, and if appropriate, having a hearing.

[Appellee's counsel] is correct that Mr. Payne is scheduled to have the minor child for a period of six (6) weeks this summer. However, this issue was previously discussed between counsel on the date of our hearing, and at that time, I informed [appellee's counsel] that I calculated the number of days during the year that Mr. Payne has the child, and that the number was not 128 or above.

\* \* \*

Upon [appellee's counsel's] request to terminate the child support for the six (6) weeks during the summer that Mr. Payne has Sonja for visits, I immediately calculated the overnights to determine if there was a shared custody situation. Even with the summer visitation, Mr. Payne has the child only 88 overnights during the year, far short of the 128 overnights required by the statute [for shared custody]. Even if your Honor does not find the statute compelling, there is also another consideration. Specifically, Ms. Payne has made arrangements for the child's summer day care, and has already become obligated to pay for the care. These arrangements were made before the court date and with the understanding that Mr. Payne would take the child to the summer day camp. Because of this expenses, [sic] Ms. Payne could not go without the child support previously ordered by this Court.

At the hearing held on June 7, 1999, appellee's counsel argued, *inter alia,* that appellee's request would enable him to use the child support monies for the benefit of his daughter, adding that he would "be able to do other things with her as far as activities and vacations and things along those lines." The father's counsel further averred:

I think in this particular case ... what Mr. Payne is requesting is in the best interest of the child. It's going to allow him to better spend his six weeks with his daughter. To provide more activities and things for her to do as

opposed to paying his ex-wife $124 for those six weeks when she is not even going to have visitation with the child during that time.

Appellant's counsel noted an objection "for the record," asserting that the matter had been improperly raised by letter, rather than by motion. She then proceeded to discuss the merits, arguing, *inter alia*, that deviation from the child support guidelines was not warranted under the circumstances of this case, because appellee does not qualify for shared physical custody, even with the extended summer visitation.

Appellee's counsel countered that the presumption concerning the application of the child support guidelines is rebuttable, and argued that deviation was appropriate here because application of the guidelines would be "unjust or inappropriate." Moreover, appellee's counsel noted that the father would be "taking a good deal" of time off from work during the visitation period.

The court observed that the weekly child support payment of $124.00 was established at a point when "nobody knew about this six weeks," and "[i]t was not something anticipated and computed into the figures." The court also stated:

First of all, I'm not going to deviate from the guidelines in terms of recomputing the set amount of $124 per week by taking into account the six weeks that the father is going to have the child. Therefore, if the support should be recomputed to, let's say $115 a week. *I view this as a situation where I'm not asked to deviate from the established sum as mandated by the guidelines. Rather, I'm being asked to suspend that amount.* That's request number one, *for the six weeks, accounting from June 21 through July 26th.*

And the second thing that is being asked of me, of course, is not only should that amount be suspended but that the mother should pay unto the father the same amount during that time span.

What I'm going to do here is not recompute. But, if the natural father has the child for the six weeks span of time, it seems inequitable to me, it seems unjust to me, that he

should still continue paying support to the natural mother while the child is, in fact, in his custody. And that money should be expending, presumably and hopefully, for her benefit.

*So I feel I'm not going to use the word deviate or recompute. What I'm going to say is that I feel it is equitable and just that the natural father not have to pay that support amount for those six weeks to the natural mother because the child is in his custody. And he is going to be expending monies for her benefit. Therefore, it works out to her best interest.*

However, and I maybe [sic] in trouble here for being chauvinistic, I'm not going to impose any support obligation to the mother. In other words, she will not be required to pay to the father the $124 per week that he is paying to the mother. She will not be receiving any support during this time nor will the natural father. I feel that that's a fatherly obligation that he should accept as a natural father.

(Emphasis added).

Thus, by order dated June 21, 1999, the court suspended appellee's child support obligation during the six week period of summer visitation. The court did not modify custody, however.

We shall include additional facts in our discussion.

## DISCUSSION

### I.

Appellant alleges that the trial court erred when it modified appellee's child support obligation because the father did not file a written motion as mandated by statute. She complains that the court was not entitled to modify child support based on written correspondence from counsel, as that did not constitute a "motion" within the meaning of Md.Code (1999 Repl.Vol.), Family Law Article ("F.L."), § 12–104(a). That section provides that the court may modify a child support order "subsequent to the filing of a *motion* for modification

and upon a showing of a material change in circumstance."
(Emphasis added).

The submission of the letter, in lieu of a formal motion, was
not necessarily an appropriate way to proceed. Nevertheless,
it has long been recognized in Maryland that "substance
rather than the form of the pleading is the controlling consid-
eration." *Lapp v. Stanton*, 116 Md. 197, 199, 81 A. 675 (1911)
(citations omitted). Moreover, our review of the record sug-
gests that the parties treated the letter from appellee's coun-
sel as a motion. After appellant's counsel received a copy of
the letter that had been sent to the court by appellee's
counsel, appellant's counsel responded to the court in like
form, without asserting an objection to the form of appellee's
request for modification of child support. Had appellant's
counsel raised her concern at that time, appellee's counsel
undoubtedly would have filed a written motion. Moreover, in
her letter, appellant's counsel asked the court to hold a
hearing if the court thought it "appropriate" to do so. There-
after, a hearing was scheduled. Even when the hearing was
scheduled, appellant did not lodge an objection to appellee's
failure to file a formal motion. Instead, it was not until the
hearing itself that appellant's counsel raised an objection to
the form of appellee's request, and then only "for the record."
Indeed, appellant's counsel acknowledged that she was aware
that the "the Court's position has always been that we should
take the most expeditious route to resolve matters in an
amicable fashion."

Additionally, appellant does not refer us to any case that
supports her assertion that, under the particular circum-
stances of this case, the court erred or abused its discretion by
treating the letter from the father's attorney as the equivalent
of a motion within the meaning of F.L. § 12–104(a). Appel-
lant's reference to *Moore v. Tseronis*, 106 Md.App. 275, 281,
664 A.2d 427 (1995), for example, is not helpful, as it merely
stands for the proposition that a court may modify a child
support obligation "[u]pon a proper petition...." *Id.* at 281,
664 A.2d 427.

**440**

■ Under the circumstances attendant here, we are satisfied that the court neither erred nor abused its discretion by addressing the child support issue on the basis of the attorneys' cross letters. Appellee's letter contained sufficient facts to give notice and inform the opposing side of the matter in controversy, including the relief appellee sought to obtain. Appellant was granted a hearing to insure that the issue was fully heard.

## II.

Appellant contends that the trial court erred in modifying appellee's child support obligation because appellee did not establish a material change in circumstance, nor did the court make a "specific finding of material change in circumstance." In effect, we are asked to determine whether the court's decision to suspend the child support obligation during summer visitation constituted a proper modification of appellee's child support obligation, or a proper deviation from the child support guidelines.

■ In 1989, the Legislature enacted Maryland's Child Support Guidelines (the "Guidelines") to comply with federal law and federal regulations. *Petrini v. Petrini*, 336 Md. 453, 460, 648 A.2d 1016 (1994); *Voishan v. Palma*, 327 Md. 318, 322, 609 A.2d 319 (1992). Unless the parents have a monthly combined adjusted income in excess of $10,000.00, use of the Guidelines is mandatory. *Wills v. Jones*, 340 Md. 480, 484, 667 A.2d 331 (1995); *Voishan*, 327 Md. at 331–32, 609 A.2d 319; *Horsley v. Radisi*, 132 Md.App. 1, 23, 750 A.2d 692 (2000); *Dunlap v. Fiorenza*, 128 Md.App. 357, 366, 738 A.2d 312, *cert. denied*, 357 Md. 191, 742 A.2d 520 (1999); *see, e.g.*, *Odunukwe v. Odunukwe*, 98 Md.App. 273, 285, 633 A.2d 418 (1993). In *Horsley*, we explained:

> The Guidelines carefully prescribe how the "basic child support obligation shall be determined in accordance with the [statutory] schedule of basic child support obligations" the support obligation is then divided "between the parents

in proportion to their adjusted actual incomes." F.L. § 12–204(a)(1).

\* \* \*

In order to implement the legislative objectives, a schedule in F.L. § 12–204(e) delineates a numeric calculation of the basic child support obligation, based on the number of children involved and the combined adjusted actual income of the parents. As we noted, this sum is divided between the parents "in proportion to their adjusted actual incomes." F.L. § 12–204(a)(*l* ); *see Petrini [v. Petrini]*, 336 Md. [453] at 461[, 648 A.2d 1016 (1994)]; *Voishan [v. Palma]*, 327 Md. [318] at 323[, 609 A.2d 319 (1992)]; *Reuter v. Reuter*, 102 Md.App. 212, 235[, 649 A.2d 24] (1994).

\* \* \*

Once the child support obligation is ascertained, the statute permits the addition of certain expenses to the Guidelines obligation. By statute, the judge *shall* add to the basic child support obligation any work-related child care expenses, pursuant to F.L. § 12–204(g), and extraordinary medical expenses, pursuant to F.L. § 12–204(h). The court *may* also add school and transportation expenses, pursuant to F.L. § 12–204(i). These additional expenses are allocated between the parents in proportion to their adjusted actual incomes. *Voishan*, 327 Md. at 323, 609 A.2d 319; *Reuter*, 102 Md.App. at 235, 649 A.2d 24.

*Horsley*, 132 Md.App. at 22–23, 750 A.2d 692.

Under F.L. § 12–202(a)(2)(i), "[t]here is a rebuttable presumption that the amount of child support which would result from the application of the child support guidelines . . . is the correct amount of child support to be awarded." *See Petrini*, 336 Md. at 460–61, 648 A.2d 1016 (citation omitted); *Walsh v. Walsh*, 333 Md. 492, 498, 635 A.2d 1340 (1994); *Dunlap*, 128 Md.App. at 367, 738 A.2d 312. In order to rebut the presumption, the evidence must show that, in a particular case, "application of the guidelines would be unjust or inappropriate . . . ."

F.L. § 12–202(a)(2)(ii); *see Petrini,* 336 Md. at 461, 648 A.2d 1016; *Dunlap,* 128 Md.App. at 366, 738 A.2d 312; *Reuter,* 102 Md.App. at 235, 649 A.2d 24. To determine whether application of the Guidelines is inappropriate, the court "may" consider the terms of any separation agreement, payment of college expenses, and the parental obligation to support other children in the household. *See* F.L. § 12–202(a)(2)(iii)(1), (2). If the court finds that the application of the Guidelines would be unjust or inappropriate in a particular case, F.L. § 12–202(a)(2)(iv) requires the court to make written or oral findings explaining the reasons why it has departed from the Guidelines, and "how this variance serves the best interests of the child." *Wills,* 340 Md. at 484, 667 A.2d 331; *see Walsh,* 333 Md. at 501, 635 A.2d 1340.

After the court sets the child support obligation, the trial court may modify the child support payment only if there is an affirmative showing of a material change in circumstances in the needs of the children or the parents' ability to provide support. *See Drummond v. State,* 350 Md. 502, 509, 714 A.2d 163 (1998); *Wills,* 340 Md. at 488, 667 A.2d 331; *Walsh,* 333 Md. at 497–98, 635 A.2d 1340; *Wagner v. Wagner,* 109 Md.App. 1, 43, 674 A.2d 1, *cert. denied,* 343 Md. 334, 681 A.2d 69 (1996). The term " 'material' limits a court's authority to situations where a change is of sufficient magnitude to justify judicial modification of the support order." *Wagner,* 109 Md.App. at 43, 674 A.2d 1 (quoting *Wills,* 340 Md. at 489, 667 A.2d 331) (footnotes and citations omitted). A decision regarding modification is left to the sound discretion of the trial court and will not be disturbed, unless that discretion was arbitrarily used or the court's judgment was clearly wrong. *Moore v. Tseronis, supra,* 106 Md.App. at 281, 664 A.2d 427.

Writing for the Court in *Drummond,* Judge Cathell explained that there are "various ways a change in circumstance could be relevant to the modification of a child support award...." 350 Md. at 509, 714 A.2d 163. One of the "obvious ways" occurs "upon the passage of some event causing the level of support a child actually receives to diminish or

increase." *Id.* at 509–10, 714 A.2d 163 (citation omitted). A change may also occur as a result of a change in the parents' "income pool." *Id.* at 510, 714 A.2d 163. *See Walsh, supra,* 333 Md. at 502–03, 635 A.2d 1340 (elimination of non-custodial parent's obligation to contribute to custodial parent's mortgage expense required remand to determine whether there was a substantial change in circumstance); *Moore,* 106 Md. App. at 284, 664 A.2d 427 (a father's relocation to a rural area and subsequent reduction in salary resulting from the relocation constituted a material change); *Lieberman v. Lieberman,* 81 Md.App. 575, 596, 568 A.2d 1157 (1990) (affirming the trial court's finding of a material change in circumstances because the father's net income rose from $200,000.00 to $386,800.00).

In this case, the father's original support obligation of $124.00 per week was established in accordance with the Guidelines. By authorizing a six-week suspension of appellee's child support payments, appellee's total annual support obligation was reduced by $744.00. In its ruling, the court was careful to indicate that it was not deviating "from the established sum as mandated by the guidelines." Instead, the court claimed that it was merely suspending the child support obligation during the six-week summer visitation period. In our view, regardless of the court's characterization of its action as a "suspension" of support, the net effect of its ruling amounted to a modification of child support, without the requisite material change of circumstances, and a deviation from the Guidelines, which did not comport with F.L. § 12–202(a)(2). We explain.

In concluding that no material change in circumstance was established, we observe that the record does not reveal any evidence of a change in parental income. Nor was there evidence that the needs of the child had changed. Moreover, apart from conclusory assertions, appellee did not present evidence of the extent to which his expenses would increase during the relevant period, nor did he establish the extent to which the mother's financial expenditures for the child would decrease, either in the six-week period or on an annual basis.

Appellee's counsel contended generally that the money would be used "[t]o provide more activities and things for [his daughter] to do as opposed to paying his ex-wife $124 for those six weeks when she is not even going to have visitation with the child during that time." We agree with appellant, however, that appellee's desire for "a better vacation" does not constitute a material change in circumstance.

Moreover, it does not necessarily follow that a custodial parent's expenditures for a child diminish significantly merely because the child has a lengthy summer visitation with the non-custodial parent. In this case, for example, there was no evidence that, during the summer visitation, the father intended to assume responsibility for the purchase of summer clothes or the school clothes that usually are needed towards the end of summer. Moreover, the mother had already paid for summer child care. In addition, other costs of the custodial parent, such as housing and utilities, are largely fixed, regardless of whether the child is physically present in the home during the visitation period.

As we see it, the court also overlooked certain economic imperatives. Clearly, some periods of time in the life of a child are more costly for a parent than others. The reality is that all of a child's financial needs and expenses are not incurred in precise weekly increments, even though child support may be paid on that basis. Therefore, a custodial parent who anticipates receipt of a certain total sum of child support over the course of a year may budget for unusual or costly expenditures that inevitably occur during the year. For example, in a particular period, a parent may incur substantial expenses for such items as uninsured medical prescriptions, school clothes, Christmas presents, the child's birthday party, or various extracurricular activities. A responsible custodial parent who is fortunate not to live from check to check undoubtedly attempts to prepare for such times by setting funds aside during weeks when the child's expenses are less than the incoming support. Similarly, appellant may have earmarked a portion of the money she expected to receive during the summer to meet the child's various needs during

the year. Therefore, it was erroneous for the court to conclude that appellant, the custodial parent, did not need continuing financial support merely because the child was visiting with the non-custodial parent. That the parties' daughter resided for six weeks during the summer with appellee did not diminish appellant's need for the total statutory amount of child support to which she was entitled.

■ It is also significant that increased summer visitation did not result in a shared custody situation within the meaning of the Family Law Article. Even with the extended summer visitation, appellee was not entitled to the benefit of child support calculated on the basis of shared custody. We explain.

The Guidelines provide for the calculation of child support when parents share physical custody. Sections 12–201(i)–(k) of the Family Law Article provide, in pertinent part:

(i) *Shared Physical Custody.*—(1) "Shared physical custody" means that each parent keeps the child or children overnight for more than 35% of the year and that both parents contribute to the expenses of the child or children in addition to the payment of the child support.

(2) Subject to paragraph (1) of this subsection, the court may base a child support award on shared physical custody:

(i) solely on the amount of visitation awarded; and

(ii) regardless of whether joint custody has been granted.

(j) *Adjusted basic child support obligation.*—"Adjusted basic child support obligation" means an adjustment of the basic child support obligation for shared physical custody.

(k) *Basic child support obligation.*—"Basic child support obligation" means the base amount due for child support based on the combined adjusted actual incomes of both parents.

In this case, the extended summer visitation did not result in the child spending at least 35 percent of the year with appellee. The parties agreed at oral argument that, inclusive of the six-week summer visitation, the child would spend a

total of 88 nights with appellee during the year. As appellee clearly did not have physical custody of the child at least 35 percent of the time, he was not entitled to the calculation of child support on a shared custody basis. Accordingly, a modification of child support on that basis was not warranted.

To be sure, almost half of the father's total yearly visitation was to occur in the summer. Although almost half of appellee's total visitation occurred during 42 consecutive days, this does not alter our analysis. Whether a parent has visitation for 88 days spread throughout the year or, instead, during 88 consecutive days, the bottom line is the same: the parent only has 88 days of visitation. As appellee only had physical custody of the child for 88 nights, he fell well short of the 128 overnights required by statute to qualify for calculation of support on a shared custody basis.

In this case, the court decreased appellee's child support obligation by suspending his obligation to pay support during the six week period in the summer when he had physical custody of his daughter. Therefore, the court modified child support and deviated from the Guidelines. On the basis of the record before the trial court, we conclude that the trial court erred in doing so.

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR CECIL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**