758 A.2d 637

**In re NORBERTO C.**

**No. 2948, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

Aug. 31, 2000.

---

Stephen H. Sachs (Wilmer, Cutler & Pickering, Deborah M. Thompson, Jonathan M. Smith, Debra L. Gardner, all of Baltimore, and Edward I. Koren, Largo, on the brief), for appellant.

C.J. Messerschmidt, Asst. Atty. Gen. (J. Joesph Curran, Jr., Atty. Gen. and Catherine Talbott, Asst. Atty. Gen. on the brief), Baltimore, for appellees.

Hannah E.M. Liegerman, Joan Little, Christopher Foudy for Amicus Curiae, Legal Aid Bureau, Inc.

Argued before MURPHY, C.J., and KENNEY and ROBERT F. FISCHER (Retired, Specially Assigned), JJ.

MURPHY, Chief Judge.

In this appeal from the Circuit Court for Baltimore County, we shall vacate the circuit court's denial of an emergency motion filed on behalf of a Child in Need of Assistance (CINA), and remand for a prompt evidentiary hearing on the issue of what—if any—changes to the child's previously approved placement plan are in the child's best interest.

## I.

Norberto C., appellant, is a disabled child who was born on September 5, 1984. In 1989, the circuit court found him to be a Child In Need of Assistance and "co-committed [him] to the care of the Baltimore County Department of Social Services [ (DSS) ] and the Developmental Disabilities Administration [of the Maryland Department of Health and Mental Hygiene, appellees]." On June 28, 1993, he was placed in the foster home of Delorise S. On May 26, 1998, Norberto was the subject of a judicial review hearing required by Md. Rule 11–115(d).

The record shows that the following transpired at the review hearing:

[DSS's COUNSEL]: This would be a review hearing today for Noberto [ ], a 13–year–old young man committed in 1989 to the Department of Social Services. Both of his parents are deceased. He is currently in a foster home through the Mentor Program. He's jointly committed both with the Department of Social Services and the Department of Health and Mental Hygiene.

This is a youngster with a number of serious disabilities and he is going to need supportive care throughout his life. He is doing well in his current foster care and we see no reason to change the status quo in this case.

So it would be the recommendation today, which I believe is agreed to by all parties, that he remain committed jointly with the Department of Social Services and the Department of Health and Mental Hygiene, that the Court certifies his current placement with the foster parent, Delorise [S.] shall be certified with the Court as permanent foster care placement for him such that we will not need to schedule further reviews in this matter.

We're also asking Ms. [S.] be given limited guardianship for medical and mental health and education travel purposes. She's the one most appropriate to consent to his needs if she's providing for his care.

* * *

[NORBERTO'S COUNSEL]: We would agree with all those recommendations, your Honor.

And Roberto [sic] has been with the same home since 1993, when he left Mount Washington. And she has been very involved with his activities and medical appointments and school placement, even when she didn't have authority to sign his individual education plan. The people who had the authority were not attending. So she is the ideal candidate for this guardianship responsibility. So we'd be asking you to do that.

We also ask for both commitments to continue, seeing there's no representative of DDS here today.

THE COURT: All right. Let's continue the dual commitment to the Department of Health and Mental Hygiene and the Department of Social Services, have the permanent foster care placement, and grant limited guardianship for mental and medical and mental health education travel purposes.

Although a written order of approval was never filed, the plan approved "on the record" was followed until January of this year.

## II.

On January 11, 2000, Norberto's counsel filed on his behalf a MOTION FOR EMERGENCY REVIEW HEARING AND STAY OF CURRENT ORDER that included the following assertions:

The issue for the hearing is whether Norberto should remain with his court-designated permanent foster parent Ms. [S.] who also retains limited guardianship for medical, educational, mental health and out-of-state travel purposes. Upon information and belief, the Baltimore County Department of Social Services intends to move Norberto from the licensed home of Ms. [S.] on January 18, 2000. Therefore this Petition seeks an emergency hearing to be scheduled on

or before that date, or in the alternative, for a stay of the current placement pending an emergency review hearing.

\* \* \*

On June 28, 1993 Norberto was moved from the Mt. Washington Pediatric Hospital to the home of Ms. [S.] located in Columbia Maryland. Norberto was placed with Ms. [S.] incident to a contract between BCDSS and Mental Maryland (Mentor) that provides specialized foster care services. While Ms. [S.] serves Norberto through a contract with Mentor, she is a licensed foster parent through the Department of Social Services.

On May 26, 1998 this Court designated Ms. [S.] as Norberto's permanent foster parent. This designation of a particular foster parent is authorized by CJ § 3–8–826.1(f) and is the preferred permanency plan for children who, due to extraordinary circumstances will be in long-term foster care. The goal of having a particular foster parent designated as child's permanent foster parent is to provide a stable permanent family situation for a child who will not be adopted.

Mentor is terminating its contract with Ms. [S.] on January 18, 2000. BCDSS plans to relocate Norberto to a temporary residence while another two-parent foster care placement is developed.

\* \* \*

Norberto is a multiply handicapped, vulnerable child who has a bond with Ms. [S.], his caretaker over the past six years. Norberto has made progress in her home. Norberto's teacher of several years, his school psychologist and his pediatrician all support his remaining with his current permanent family, Ms. [S.]. Moving Norberto from Ms. [S.] is contrary to his best interest. He stands to lose not only his home and primary caretaker, but also possibly his school placement and primary care physician.

On January 14, 2000, DSS filed an Answer to Norberto's motion that, in relevant part, stated:

> [N]either the Court nor the Department of Social Services can make Mentor, a private provider and not a party to this case, continue to utilize Ms. [S.] as the provider for Norberto. The Department of Social Services has contracted with Mentor to provide specialized foster care services for Norberto. In the past they have chosen to provide this service through Ms. [S.] who was *not* licensed through the Department of Social Services. Now that Mentor has determined that Mr. [S.] is no longer able to meet *their* standards for providing care for Norberto, neither this Court nor the Department of Social Services can tell them that they must do otherwise. There is in effect no way for the Court to grant the relief to which this Motion alludes.
>
> WHEREFORE, your Petitioner prays that this Court deny the request For Emergency Review, deny the request to issue an Order requiring Mentor to continue the child's placement with Ms. [S.] and for such other and further relief as the nature of this cause may require.

(Emphasis in original).

On January 18, 2000, the circuit court held a hearing on the emergency motion. Norberto's counsel advised the court that he had "just learned that Norberto was removed from [Ms. S.'s] home this morning ... and sent to a ... home in Hagerstown," and that he had "five witnesses that are here ready to testify" in "dispute" of DSS's "claims [that Norberto's removal] is based on ... safety and sanitation concerns and ... that Delorise [S.] does not have the present ability to lift and maneuver Norberto because of his size and weight." DSS's counsel argued that "the relief which is being requested is something that I believe the Court is not in a position to ... render," and in support of that argument, stated:

> The Department of Social Services has ... provided for [Norberto's] care through the utilization of the foster home provided by an organization which is known as Mentor. The foster parent is not licensed by the Department of

Social Services in Baltimore County but, rather, is a purchase of care arrangement through the Mentor. Mentor has made a determination that their foster parent, Miss [S.], is no longer able to care for this young man.

\* \* \*

If [contract care providers like Mentor] make a determination their foster parent is unable to care for the child we're not in a position to tell them that they're wrong, that they have to continue using that foster parent. If they don't choose to utilize that foster home we cannot make them and we cannot utilize it either. So there isn't, actually, any mechanism that I'm aware of that can require Mentor, which is a private concern, not a party to this case, to continue to utilize a foster parent that they deemed is inappropriate .... we're not saying that Miss [S.] hasn't provided good care to the child in the past and that there isn't really a connection between the two of them, but the consensus is that she's no longer able to meet his needs due to changing circumstances and, as such, they feel that they cannot continue utilize [sic] displacement [sic].

Having said that, I simply don't understand how [Norberto's motion can] be granted, since this is a private provider and not really subject to the Department of Social Services' demands, nor the direction of the Court. And I say that with all due respect to the Court, because I believe that the law and the case law is very clear on that.

\* \* \*

So even if your Honor were inclined, after hearing evidence, to think that Miss [S.] was an appropriate placement for the child, and the Department, and DDA and Mentor were wrong, I don't believe that the Court has the authority to grant the relief which is being requested here. **The only way that I believe that the relief could be granted would be for the Court to, if you will, rescind the commitment**

and grant custody to Miss [S.], which is a possibility. But I don't really think it's realistic here.

(Emphasis added).

Norberto's counsel made the following response .to that argument:

In 1998 on the recommendation and the approval of Department of Social Services and with the approval of Mentor the Court granted what's called permanent foster care status to Miss [S.]. And in that ... court order they not only said that she had the status of permanent foster care, but that ... her home was designated as the home in which Norberto should live. An on top of all of that, ... the Court also granted what's called limited guardianship for medical-mental health, educational and out of state purposes to Miss [S.]. So this is not just any old foster care situation; this is a permanent foster care situation under a permanency plan that's been approved by this Court.

\* \* \*

[Md.Code Ann., Cts. & Jud. Proc. § 3–826.1(f)(1)(ii) ] says the Court is not required to hold a review hearing every six months if the Court at the permanency planning hearing or at a subsequent review hearing ... determines that the child should be continued in permanent foster care or kinship care with a specific caregiver who agrees to care for the child on a permanent basis. That's the situation that we have here.

What I'm suggesting is that we have a court order and ... circumstances have changed in the view of DSS and, therefore, it's incumbent upon them to come before the Court as to why that permanency plan should be changed. They have not done that. What they have done is just move Norberto.

\* \* \*

In terms of relief we have already made several alternative suggestions to DSS about this particular case. If we

can all agree that Norberto should be with Delorise [S.] in her home, there are other ways to provide services that she requires in that home other than through specialized foster care. We could find another specialized foster care situation for Norberto; we could also ask the agencies to come together and to create another plan.

The circuit court denied Norberto's motion without receiving evidence, explaining:

Well, I don't think that what's been done [is] violative at all of the court order. And you filed your Motion for Emergency Review which I now deny under the current status of both the statute and the case law ...

... I don't have any authority to interfere with what Mentor has done with this child. That's my ruling. I have no authority.

This appeal followed.

## III.

██ Appellees first argue that this appeal is moot. There is no merit in that argument. The circuit court obtained jurisdiction over Norberto, and "that jurisdiction continues until [Norberto] reaches 21 years of age unless terminated sooner." Md.Code Ann., Cts. & Jud. Proc. 3–806. Moreover, a case that involves "frequently recurring issues of public importance ... ought to be decided." *Rutherford v. Rutherford*, 296 Md. 347, 352, 464 A.2d 228 (1983).

██ Appellees next argue that, because the circuit court "properly declined to consider ordering placement [of Norberto] with a specified caregiver who is not approved for placement," that court was correct in its conclusion of law that it did not "have any authority to interfere with what Mentor has done with this child." According to appellees, the circuit court has no more authority over the placement of a child adjudicated to be a CINA than it has over the disposition of a child

adjudicated to be delinquent.[1] There is no merit in that argument. Having requested that the circuit court (1) approve Norberto's placement with Ms. S., and (2) entrust Ms. S. with guardianship responsibility for Norberto's medical care, DSS cannot now claim that the court is powerless to determine what is in Norberto's best interest.

 The circuit court has an obligation to provide for the delivery of specific services and treatment for a child who has been adjudicated a CINA. *In re Danielle B.*, 78 Md.App. 41, 69, 552 A.2d 570 (1989). The General Assembly has wisely provided that once juvenile court has approved of the permanency plan for a CINA, that court *must* "[c]hange the permanency plan if a change in the permanency plan would be in the child's best interest" and *must* "[e]valuate the safety of the child and take necessary measures to protect the child." Md.Code Ann., Cts. & Jud. Proc. § 3–826.1(f)(2)(v) and (vi).

 "[I]t has long been recognized in Maryland that 'substance rather than the form of the pleading is the controlling consideration.'" *Payne v. Payne*, 132 Md.App. 432, 439, 752 A.2d 1209 (2000) (citing *Lapp v. Stanton*, 116 Md. 197, 199, 81 A. 675 (1911)) (internal citations committed). The disposition of this appeal should not turn on the court's authority to provide the exact relief requested in the WHEREFORE clause of Norberto's emergency motion, on the fact that the decision announced by the circuit court on May 26, 1998 was not thereafter reduced to writing, or on the contractual relationship between DSS and Mentor.[2]

---

1. Appellees emphasize that, when a juvenile court commits a delinquent child to the custody of the Department of Juvenile Services, the court does not have authority to order that the child be placed in a specific facility. *In Re Demetrius J.*, 321 Md. 468, 481, 583 A.2d 258 (1991). Norberto, of course, has never been adjudicated a delinquent.

2. Because this Court does not issue advisory opinions, and because an evidentiary hearing is necessary to establish the relationships between (1) DSS and Mentor, and (2) Mentor and Ms. S., we shall not now address the issue of what the circuit court can require of DSS and/or Mentor. It is not premature, however, for us to declare that the circuit court has both the authority and the duty to terminate Mentor's involve-

■ The emergency motion that was denied in this case asserted facts that established the need for an evidentiary hearing to determine whether "a change in [his] permanency plan was in [Norberto's] best interest." We shall therefore (1) vacate the order denying Norberto's emergency motion, (2) remand this case to the circuit court for an evidentiary hearing,[3] and (3) direct that the hearing required by this opinion be held as promptly as is reasonably practicable.

**JUDGMENT VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. APPELLEES TO PAY THE COSTS.**

---

ment with Norberto if termination of that involvement is in Norberto's best interest.

3. At the conclusion of that hearing, an aggrieved party will have a right to appellate review of whatever appealable order is entered by the circuit court.