Cheryl Green WILKINS, Appellant,

v.

William BELL, Appellee.

Nos. 05–FM–930, 05–FM–1587.

District of Columbia Court of Appeals.

Submitted Dec. 12, 2006.

Decided Feb. 22, 2007.

Khadijah R. Ali was on the brief for appellant.

Kay M. Clarke, Washington, was on the brief for appellee.

Before FISHER and THOMPSON, Associate Judges, and FERREN, Senior Judge.

THOMPSON, Associate Judge:

These appeals stem from a child support dispute between appellant Cheryl Green Wilkins, mother of the then-minor child A., and appellee William Bell, father of the child. Bell was under an order, first entered in 1989, to pay child support to Wilkins, who had custody of the child. Wilkins challenges orders by which the trial court relieved Bell of the obligation to pay child support for a several-month period beginning in December 2004. She also challenges the court's order denying her motion for sanctions against Bell and his attorney, and imposing similar sanctions on her own attorney. We reverse and remand with respect to the child support issue, but affirm as to the sanctions rulings.

## Factual and Procedural Background

Commencing sometime during September or October of 2004, A. went to stay temporarily with Bell, for a period that turned out to be approximately eight weeks. On November 17, 2004, Bell filed a Motion to Stay Enforcement of Child Support Order, advising the court that A. had been living with him for eight weeks and desired to remain with him, and arguing that Wilkins therefore "ha[d] received two months of child support unjustly." Bell's counsel presented the motion to the court during a status conference that had been scheduled for that same date in conjunction with Bell's pending motion for a modification of the custody order. Wilkins, who appeared *pro se*, objected to the motion and denied that A. wanted to continue living with Bell, but acknowledged that A. had recently been staying with Bell. Both parties told the court that A. would "be returning home sometime on Friday, this Friday" after completing a college tour.

Observing that "this is a motion to stop payment as long as the child is there" (*i.e.*, with Bell), the court agreed to stay enforcement of the support order. The court stated, "I think it would be equitable to terminate—to suspend the child support from the time the child was with him and then restart it when the child has moved back—if the child has moved back with Ms. Green [Wilkins]." The court said that

it would enter an order prospectively suspending garnishment of Bell's wages for two months. The court's written order of November 17, 2004, states in pertinent part:

> ORDERED, that the motion [to stay enforcement of the child support order] should be continued to February 9, 2005 at 9:30 a.m. before the undersigned Judge; and it is further
>
> ORDERED, that the support order should be suspended from December 11, 2004 until February 9, 2005; and it is further
>
> ORDERED, that wage withholding shall be released for the period of December 11, 2004 to and including February 9, 2005[.]

In advocating the suspension order, Bell's counsel told the court during the November 17 proceeding that "if [A.] does come back then Ms. Wilkins can come back in—and lift the enforcement or lift the stay of enforcement." The court also stated, "[a]nd if the child moves back, then—but in the meanwhile then Ms. Wilkins can ask for an emergency hearing to have support reinstated." The court also set February 9, 2005 as the date for a trial on Bell's motion for modification of custody.

On December 8, 2004, Wilkins filed her "Emergency Motion to Reinstate Child Support Payments," stating that "the minor has returned to the home of [Wilkins]" and that Wilkins "is in need of the support payments to adequately care for the minor child," and asking the court either to reverse its November 17 order or to "reinstate support payments." The motion was accompanied by the affidavit of A., stating that "my intention is to remain living with my mother until I reach the age of twenty-one." On December 10, 2004, Bell's counsel filed an opposition, asserting that Wilkins' motion "failed to state any reason why equity requires child support payments to begin again."

When the parties appeared before the court on February 9, 2005, Wilkins, who again appeared *pro se*, asked for a continuance of the hearing on Bell's custody motion so that the parties could resume their attempts at mediation. Wilkins also attempted to advise the court about where A. was living. The court deferred discussion of that issue, and set a new trial date of March 10, 2005, saying "[w]e will keep this until March 10," at which time the parties could "raise any issues with respect to support including the periods of time you had the child."[1]

On March 21, 2005, after trial on the custody motion had been continued again

---

1. The record on appeal contains two February 9 transcripts; one showing on its cover the date of "February 9, 2005," and the other showing the date of "Feb. 9, 2004." However, most portions of the two transcripts are identical, and we conclude that the date on the second transcript is in error and that the second transcript is also a transcript of the February 9, 2005 proceedings. The Certificate of Transcriber attached to the first transcript states that it was prepared on April 11, 2006 by Jacqueline Hogue from "electronic recordings." The Certificate of Transcriber attached to the second transcript states that it was prepared on June 17, 2005 by Cindy Balzer from an "audio recording." The differences in the transcripts appear to reflect different portions of the recordings that the transcribers found "indiscernible" or that one (but not the other) transcriber could not transcribe because of "equipment malfunction." One result is that the first transcript, but not the second, contains the following statements by Wilkins:

 Ms. Wilkins: With questions to where [A]. is staying the last time we were here and you wanted to establish that? She's here today if you need to speak to her to verify where she is living because he said she was living with him, and that was the reason why you had suspended support in the beginning. Remember? Based on her—him claiming that she was living with him.

 February 9, 2005 Transcript at 6.

until April 18, 2005, Bell's counsel filed an "Emergency Motion to Continue Stay of Enforcement of Child Support Order." The memorandum in support of the motion asserted that "[u]nfortunately, prior to leaving the courtroom on February 9, defendant [Bell] did not obtain a written order of the Court as to the continuation of the stay on the child support order." The memorandum further asserted that garnishment of Bell's pay had resumed and that the most recent garnishment amount reflected an arrearage that Bell disputed and that he had requested be the subject of an audit by the Child Support Services Division of the D.C. Office of Attorney General. Finally, citing Wilkins' repeated requests for continuances of the custody hearing and the alleged accounting error as to arrearages, and asserting that Wilkins' request on February 9 that the "child support order be re-instated and the stay of November 17, 2004 be lifted was denied by this Court," the memorandum requested an order "continuing the stay of enforcement of child support obligations of the defendant." On March 21, 2005, the same day Bell's Emergency Motion to Continue Stay was filed, and without any response from Wilkins having been filed, the court granted the motion. The court's order, made effective *"nunc pro tunc* to February 9, 2005, stated that 'the current child support order is stayed pending further Order of this Court.' "

Wilkins ultimately obtained counsel, who entered her appearance on April 14, 2005, and filed a motion for Rule 11 sanctions a day later, alleging that during the November 17 and February 9 proceedings, Bell

and his counsel had made misrepresentations to the court about where A. was residing. During proceedings before the court on April 18, Wilkins' counsel made an oral motion asking the court to reinstate child support, and Bell's counsel reminded the court that Wilkins' written motion to reinstate was still pending. The court continued all matters until May 10. At the May 10 hearing, the trial judge took the Rule 11 sanctions motion under advisement. The court stated that it would reinstate the support order effective July 1, 2005, and, on May 26, 2005, signed an order (on a standardized form) requiring Bell to resume making child support payments as of July 1.[2] Neither the May 10 oral ruling nor the May 26 written order provided for any retroactive payments to cover the period back to December 11, 2004.

By order dated May 27, 2005, the court denied Rule 11 sanctions against Bell's counsel and instead granted Bell's request for recovery of his costs of responding to the sanctions motion. The court found that Wilkins' counsel "knew or should have known from the plain language of Rule 11 that the Rule does not apply to oral representations or misrepresentations that are made in open court by either a party or an attorney." In an order dated August 16, 2005, the court denied Wilkins' motion to reconsider the May 27 sanctions order.

Wilkins contends on appeal that the trial court abused its discretion in suspending Bell's child support obligations, and she also challenges the court's rulings on sanctions.[3] We begin our analysis by explaining which child support ruling we are un-

---

**2.** Bell's counsel had advised the court that two child support checks had mistakenly been issued to Wilkins while the stay of child support was in effect. The court set July 1, 2005, as the date for payments to re-commence to give Bell "credit" for the amounts he paid after the order suspending child support had been issued.

**3.** Wilkins filed her appeal from the court's child support rulings on May 15, 2005, and the appeal was docketed as No. 05–FM–930. Wilkins' second appeal, seeking review of the trial court's sanctions rulings, was filed on September 15, 2005, and has been docketed as No. 05–FM–1587, under the caption *Cheryl Green v. William Bell*. We note that while the

dertaking to review, and the basis of our jurisdiction. We then go on to address the merits.

## Analysis

### I.

Wilkins' brief challenges both the court's November 17, 2004 order staying enforcement of the child support order, and the court's action on Wilkins' December 8 written motion (reiterated through oral motions on February 9 and April 18) requesting that the court "reinstate support payments or reverse the order entered on November 17." We consider first the timeliness of Wilkins' challenge to the November 17 order.

■ We are satisfied that the November 17 order fell somewhere among the types of rulings that D.C.Code § 11–721 (2001) authorizes this court to review. *See* D.C.Code § 11–721(a)(1) and (2)(A) (giving this court jurisdiction of appeals from final orders of the Superior Court and from interlocutory orders modifying injunctions). Although the order stayed enforcement of the child support order for a specified finite period, and although the parties and the court contemplated that a further modification of the support order might soon follow, the November 17 ruling purported to be a final order with respect to the period from December 11, 2004, to February 9, 2005. *See McDiarmid v. McDiarmid,* 594 A.2d 79, 81–82 (D.C.1991) (holding that a ruling was final where it

represented a complete determination of the merits such that the trial court had only to administer or enforce its judgment).[4] Accordingly, the November 17 order was immediately appealable and, unless the time for appeal was tolled, any appeal was required to be filed within thirty days after November 17. *See* D.C.App. R. 4(a). Because Wilkins' initial notice of appeal was not filed until May 18, 2005, her appeal was not timely as to the November 17 order unless the time for appeal was somehow tolled.

■ The time for appeal would have been tolled if, within ten days after November 17, Wilkins had filed a motion to alter or amend pursuant to Superior Court Domestic Relations Rule 59, or a motion for relief from judgment or order pursuant to Superior Court Domestic Relations Rule 60(b). *See* D.C.App. R. 4(a)(4)(A)(iii) & (v); *see also Nichols v. First Union Nat'l Bank,* 905 A.2d 268, 271–72 (D.C.2006). Wilkins' December 8 "Emergency Motion to Reinstate Child Support Payments" was not so captioned, but we nevertheless deem it to be a Rule 60(b) motion, because it was premised on a claim that it was "no longer equitable that the [November 17 order] should have prospective application." Super. Ct. Dom. Rel. R. 60(b)(5); *see also Wallace v. Warehouse Employees Union # 730,* 482 A.2d 801, 805 (D.C.1984) ("The nature of a motion is determined by the relief sought, not by its label or caption.").[5] The motion was a timely Rule

---

second appeal was timely filed, it was only recently docketed; its docketing post-dated the parties' submissions of their briefs addressing both the child support and sanctions issues. We consolidate the two appeals for decision in this opinion.

4. We note that the trial court regarded the November 17 order as an appealable order, admonishing Wilkins' counsel during the May 10 proceedings that the fact that Wilkins failed to file a motion to reconsider that ruling within ten days after it was issued would

prevent her from meeting the jurisdictional requirements for a further appeal.

5. It would also be proper to treat the May 10 ruling denying the December 8 motion as a denial of an "original motion to modify and/or enforce the existing child support order." *Miller v. Miller,* 561 A.2d 1005, 1005–06 (D.C.1989). We reject Bell's assertions that the December 8 motion was not a "true motion to lift the stay of child support" or a motion to reinstate, and that Wilkins "did not request a lift of the stay of child support until

60(b) motion, as it was filed "not more than one year after the ... order ... was entered." *Id.* However, the filing date of Wilkins' December 8 motion was twenty-three days after issuance of the November 17 order. For that reason, the December 8 motion did not toll the 30–day time period for appealing the November 17 order. *See Nichols,* 905 A.2d at 271–72 (Rule 60 motions that are filed within ten days toll the time to appeal). We conclude, therefore, that we do not have jurisdiction to hear Wilkins' challenge to the November 17 order.

We do have jurisdiction to review the May 10 order (and the corresponding May 26 written order), by which the court effectively denied Wilkins' December 8 motion, whether that motion is regarded as an original motion to modify the existing child support order or as a Rule 60(b) motion. *See State Farm Mut. Auto. Ins. Co. v. Brown,* 593 A.2d 184, 185 (D.C.1991) ("we do not review or determine the merits of the underlying action but only decide whether there has been an abuse of discretion in denying the Rule 60(b) motion").[6] Through the two May 2005 orders, the court ruled that it would reinstate child support commencing July 1, 2005, without any retroactive award for either the December 11 to February 9 period, or the period after February 9. Thus, part of our task in reviewing the court's May 2005 support orders is to consider the orders as

they affect the same time period covered by the November 17 order.

Bell's brief identifies one other potential obstacle to Wilkins' challenge to the May 10 and May 26 child support orders. The brief asserts that a "Consent Order was prepared and submitted" to the court and "[t]here was no request in the Consent Order for arrearages; hence any claim for arrearages by Ms. Wilkins was waived pursuant to the Consent Order." Bell has not provided us with a copy of any such consent order, and we have found nothing in the record that is so labeled. We think Bell's reference to a "consent order" may be a reference to the fact, suggested by the transcript of the May 10, 2005 proceedings, that Bell's counsel offered to fill out a child support order standardized form for the court to sign, and said that she would first "fax it to counsel and see if she agrees with it and then provide it to chambers by the end of the week." The May 10 transcript shows plainly, however, that Wilkins' counsel did not acquiesce in an order that would be without a retroactive award. To the contrary, as already noted, during the May 10 proceedings, Wilkins' counsel asked the court once again to reconsider the November 17 ruling by which the court had suspended child support payments commencing December 11, 2004. In light of the court's having made clear during the May 10 proceedings, in response to Wilkins' counsel's request, that it would not revisit the issue of the previous suspension

April 18, 2005." Those assertions are inconsistent with statements that Bell's counsel made on April 18, 2005, when she told the court that Wilkins' counsel need not take the "extra step" of filing a written motion to reinstate child support because there was a "still open," "pending motion that was not ruled upon that was filed by Mrs. Wilkins [sic] pro se."

**6.** *See also Zona v. Lincoln Log Homes, Inc.,* 1992 WL 121659, 1992 U.S.App. LEXIS 14031 (6th Cir.1992) (Rule 60(b) motion was

not filed within ten days of the underlying judgment, so appeal from the order denying Rule 60(b) relief did "not bring up for review the underlying judgment," but appeal proceeded on whether the trial court erred in denying the Rule 60(b) motion). We have treated federal court decisions interpreting Federal Rule of Civil Procedure 60 as persuasive authority in interpreting D.C. Superior Court Rule of Civil Procedure 60. *See Olivarius v. Stanley J. Sarnoff Endowment for Cardiovascular Sci., Inc.,* 858 A.2d 457 (D.C. 2004).

of child support, we conclude that even if Wilkins' counsel somehow approved the form that the court signed as its May 26 order, her approval did not amount to a consent that waived the issue of child support for the December 11, 2004 to June 30, 2005 period.

Accordingly, we go on to review, for abuse of discretion,[7] the merits of the May 2005 support orders, insofar as they omitted any retroactive award of child support.[8]

## II.

We hold that the court abused its discretion in denying Wilkins' December 8 motion and in issuing its May 10 and May 26, 2005 child support orders relieving Bell of the obligation to make child support payments for the period from December 11, 2004, through June 30, 2005.

■ As to the period from December 11, 2004, through February 9, 2005, the court's May 2005 rulings made permanent a suspension that the court originally had entered as an ostensibly prospective suspension, in an apparent effort to comply with D.C.Code § 46–204(c) (2001), which generally prohibits retroactive modifications of child support.[9] In actuality, the suspension for the December 11 to February 9 period represented a retroactive modification of Bell's child support obligation, whose only rationale was to reimburse Bell for child support that he paid

during the eight-week period in the Fall of 2004 when A. stayed primarily at his home. This was not a valid basis for denying Wilkins a retroactive award of child support to cover the December 11, 2004, to February 9, 2005 period, when there was no dispute that A. had returned to live with Wilkins and lived with her from December 11, 2004, to February 9, 2005, and during subsequent periods.

■ Furthermore, even without regard to the statutory prohibition against retroactive modifications of child support awards, the court abused its discretion when, without holding a hearing, it relieved Bell of his obligation to make child support payments for a period equivalent to the relatively brief period during which A. stayed at his home. A court abuses its discretion when it rules on a motion to suspend child support payments without conducting a hearing to receive the parties' evidence. *Garcia,* 622 A.2d at 67; *see also Lopez v. Ysla,* 733 A.2d 330, 334 (D.C.1999) (abuse of discretion when court fails to consider alleged proof substantiating party's motion for modification of child support).[10] In addition, "[t]o warrant modification of a support order," the court must find "a substantial and material change of circumstances with respect to either the needs of the children or the financial ability of the parent to pay." *Guyton v. Guyton,* 602 A.2d 1143, 1145 (D.C.1992); *see also Robinson v. Robinson,* 629 A.2d 562,

7. *See Garcia v. Andrade,* 622 A.2d 64, 67 (D.C. 1993) (a decision whether to suspend child support payments is "within the sound discretion of the trial court"); *State Farm,* 593 A.2d at 185 n. 4 (our task is to decide whether there was an abuse of discretion in denying the Rule 60(b) motion).

8. Although we do not review the November 17 order *per se,* it is necessary to discuss the November 17 proceedings and the rationale of the November 17 ruling as a backdrop for understanding the court's subsequent actions. It will also be plain to the reader that much of

what we say about the May 10 ruling would apply as well to the court's earlier order suspending child support payments.

9. A retroactive award of child support may, however, be permitted "for the period during which a petition for modification is pending." D.C.Code § 46–204(c) (formerly D.C.Code § 30–504(c) (1981)).

10. *See also* D.C.Code § 16–916.01(*o*)(6) ("No order [modifying child support] shall be modified without a hearing if a hearing is timely requested.").

567 (D.C.1993). Here, the parties' agreement that there had been a temporary change in A.'s living arrangement during the Fall of 2004 did not establish that there was a "substantial and material change in circumstances" that warranted a modification of child support. Quite the contrary, Wilkins had told the court, on November 17, that she had "been paying for all of [A.'s] clothes" as well as her new shoes, school lunches, transportation to and from school, and birthday party expenses, during the time that A. was staying with Bell. The court never held a hearing on these representations, nor did it make pertinent findings of fact before entering its order omitting any award of child support for the December 11 to June 30 period. This was an abuse of discretion. *Cf. Payne v. Payne,* 132 Md.App. 432, 752 A.2d 1209, 1215–16 (2000) (holding that it was erroneous for the trial court to conclude that appellant, the custodial parent, did not need continuing financial support merely because the child visited with the non-custodial parent over the summer, because there was no showing that the custodial parent's expenditures for the child had diminished significantly, and because the court did not take into account that some of the custodial parent's costs were largely fixed, regardless of whether the child was physically present in the home during the visitation period).

Insofar as the court's May 10 and May 26 orders made permanent the further suspension of child support for the period after February 9, 2005, the court's error was compounded. A modification of the child support order for the period from February 9 to June 30, 2005 could have been warranted only if there had been a substantial and material change in circumstances of the child or the parents. The court conducted no evidentiary hearing for this time period either, and did not otherwise inquire into whether there had been any such change in circumstances. The court had been advised that A. had resumed living with Wilkins, and Bell never took issue with that representation. Moreover, as noted above, in urging the court to suspend child support at the November 17 hearing, Bell's counsel had acknowledged—and the court agreed—that if A. were to return to Wilkins' home, that would be an occasion for reinstating the child support order.

■ All that was in the record as a basis for the further suspension of child support payments for the period from February 10 to June 30, was Bell's March 21, 2005 *ex parte* motion of the same date seeking a continuation of the stay. Not only did the March 21 motion assert, erroneously, that the court had already denied Wilkins' motion for reinstatement,[11] but also Bell relied on irrelevant or unproven facts as grounds for the motion. One ground was that Wilkins had twice requested a continuance of the hearing on Bell's motion to modify custody, a fact that was irrelevant, because litigation conduct is not one of the factors that the Child Support Guidelines set out in D.C.Code § 16–916.01 specify as pertinent to a determination of the amount of child support. The other ground was that Bell's wages improperly had been garnisheed to recover arrearages that he claimed did not exist, a

---

11. Contrary to the representation made in Bell's March 21, 2005 Emergency Motion to Continue Stay, *i.e.,* that the court denied Wilkins' request to reinstate child support when the parties appeared before the court on February 9, the court did not deny Wilkins' oral request. Nor had the court by then denied Wilkins' December 8 motion. Bell's counsel admitted as much when she told the court on April 18 that "on February 9th there was a pending motion [to reinstate] that was not ruled upon that was filed by Ms. Wilkins *pro se.*" Bell's brief on appeal states that the December 8 motion "was never denied." We find that the court held the motion, and did not (effectively) rule on it until May 10, 2005.

fact that was never proven in the child support proceedings.

Thus, there was no proper basis for the court to deny Wilkins' motion to reinstate child support for the period commencing December 11, 2004. We therefore vacate the court's May 10 order and the corresponding May 26 written order to the extent that they denied Wilkins an award of child support retroactive to December 11, 2004.

## III.

 We review the trial court's rulings as to sanctions for abuse of discretion. *See Bredehoft v. Alexander*, 686 A.2d 586, 593 (D.C.1996). Rule 11 sanctions are available when a "pleading, written motion, or other paper" that is signed by an attorney is not "well grounded in fact" or was for an improper purpose "such as to harass, embarrass, or cause unnecessary delay or needless increase in the cost of litigation." Super. Ct. Dom. Rel. R. 11. Thus, only a "pleading, written motion, or other paper" is sufficient to sustain a Rule 11 motion; oral representations are not. *See Chevalier v. Moon*, 576 A.2d 722, 722–23 (D.C.1990). Appellant asked for the imposition of sanctions to hold appellee Bell and his counsel liable for "allegations and representations made by [them] at the November and February [ ] hearings." Because allegedly false *oral* representations were the basis for Wilkins' Rule 11 sanctions motion, the trial court did not abuse its discretion in denying Wilkins' motion.[12]

 As noted above, instead of sanctioning Bell's attorney, the trial court granted Rule 11 sanctions against Wilkins' counsel. The court reasoned that, because the plain language of Rule 11 requires that a "pleading, written motion, or other paper" be the basis of a Rule 11 motion, Wilkins' counsel should not have filed her Rule 11 motion based upon oral representations. The court concluded that as Wilkins' counsel did not make a non-frivolous argument for the extension of Rule 11 to cover oral representations, she herself had acted in violation of Rule 11. The court was specifically authorized under Rule 11 to award attorney's fees incurred in opposing a sanctions motion where it found that such an award was warranted. *See* Super. Ct. Dom. Rel. R. 11 (the sanction imposed on the person who signs a paper in violation of Rule 11 "may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the ... motion ...", including a reasonable attorney's fee"). Accordingly, while we agree with Wilkins' argument that the record reveals misleading omissions by Bell in opposing Wilkins' requests to reinstate child support and therefore think the court would have had sound reason for not requiring Wilkins to bear Bell's costs, we can find no abuse of discretion in the court's order sanctioning Wilkins' counsel.

This matter is remanded for further proceedings consistent with this opinion.

*So ordered.*

kins' motion explicitly was a Rule 11 motion, governed by the subject-matter limitation described in the Rule. *See generally In re Jumper*, 909 A.2d 173 (D.C.2006) (explaining why a finding made pursuant to a Rule 11 inquiry may not justify a sanction imposed under the court's inherent authority).